MATILDA GUFFEY, Respondent, v. THE HANNIBAL & ST. JOSEPH RAILROAD COMPANY, Appellant.

Kansas City Court of Appeals, April 3, 1893.

1. Carriers: INJURY OF PASSENGER: STOPPAGE OF TRAIN: PRIMA FACIE CASE. When a passenger shows that he was without his fault injured on one of defendant's passenger carrying trains by its sudden stoppage he makes a *prima facie* case of negligence.

2. Negligence: WITNESSES: OPINIONS. The expressions of witnesses, not sufficiently qualified to give an opinion as to what is usual in the operation of freight trains, are of no value and do not constitute so much as a *scintilla* of evidence.

3. ———: PASSENGERS ON FREIGHT TRAINS. A railway company assuming to carry passengers on its freight trains is bound to exercise the same degree of care as it required in the operation of regular passenger trains, the difference being that the passenger submits himself to the inconvenience and danger necessarily attending that mode of conveyance.

4. ———: USUAL COURSE: LIABILITY: ACCIDENT. Negligence cannot be presumed when nothing is done out of the usual course of business unless the course is improper; there must be some special call for more particular care to make liability. An unusual occurrence producing injury, but not even inferentially the result of an unusual act of the defendant who is pursuing his usual course theretofore pursued with safety, is what is called an accident.

*Error to the Macon Circuit Court.*—HON. ANDREW ELLISON, Judge.

REVERSED.

*Spencer, Burnes & Mosman*, for appellant.

(1) A person who becomes a passenger on a freight train assumes the risks and inconveniences necessarily and reasonably incident to carriage by that method. "The passenger submits himself to the inconvenience

and danger necessarily attending that mode of convey-ance." *Railroad v. Hazzard*, 26 Ill. 377; *Whitehead v. Railroad*, 99 Mo. 268; *Wagner v. Railroad*, 97 Mo. 521; *Woolery v. Railroad*, 107 Ind. 381; *Perkins v. Railroad*, 60 Miss. 726; 1 Biss. 503. (2) The defendant contends that there is no evidence in this case which would war-rant its submission to a jury.   In order that the defend-ant should be held liable in this case, the evidence must show that it was guilty of some carelessness or negligence which produced the injury.   There is no evidence tend-ing to show that the jerk was due to any want of proper care in the management of the train. *Railroad v. Hazzard, supra; Wallace v. Railroad*, 98 N. C. 94; *Smith v. Railroad*, Sup. Ct. (N. C.) March 26, 1888; *Murch v. Railroad*, 29 N. H. 40-43 of opinion. *Rochait v. Railroad*, 49 N. J. L. 445; *Railroad v. Hayes*, 97 N. Y. 259; *Brown v. Railroad*, 49 Mich. 153.   (3) Defendant as a carrier of passengers was not bound to foresee and provide against casualties which had not been known to occur before and which may not reasonably be expected.   Trains had been run in the manner in which this train was running for years every day, and that manner of conducting them had uniformly proved adequate and safe.   Under such circumstances the defendant could continue to operate its trains in this manner without imputation of negligence.   *Mitchell v. Railroad*, 51 Mich. 236; *Higgins v. Railroad*, 73 Ga. 149; *Laflin v. Railroad*, 106 N. Y. 136; *Kelley v. Railroad*, 15 N. E. 879; *Sykes v. Sheldon*, 58 Iowa, 744; *Christy v. Briggs*, 2 Camp. 79.   The injury to plaintiff was purely an accident which could not be foreseen or prevented. The railroad company was not bound to anticipate that the person who fell on plaintiff would be on his feet at just such a distance from plaintiff, at the moment the jerk occurred, that he would be thereby caused to fall on her.   *Dougan v. Champlain Co.*, 56 N. Y. 7; *Muster*

*v. Railroad*, 61 Wis. 325; *Crocheran v. N. Shore Co.*, 56 N. Y. 656; *Loftus v. Ferry Co.*, 84 N. Y. 455; *Cleveland v. N. J. Co.*, 68 N. Y. 313; s. c. on third appeal, 26 N. E. Rep. 327; *Joy v. Winniset Co.*, 114 Mass. 63.

*W. H. Sears* and *R. G. Mitchell*, for defendant in error.

(1) Respondent contends that there is no error in the instructions given by the court for the plaintiff, andthat the court below committed no error in either giving the instructions for the plaintiff or refusing the instructions not given for the defendant. *Dimmit v. Railroad*, 40 Mo. App. 654; *Hipsley v. Railroad*, 88 Mo. 348; *Furnish v. Railroad*, 102 Mo. 438; *McGee v. Railroad*, 92 Mo. 208; *Whitehead v. Railroad*, 99 Mo. 263; *Bryan v. Railroad*, 32 Mo. App. 228; *Waller v. Railroad*, 83 Mo. 608; *Rine v. Railroad*, 100 Mo. 228; *Whalen v. Railroad*, 60 Mo. 323; *Russell v. Columbia*, 74 Mo. 480; *Sidokem v. Railroad*, 93 Mo. 400; *Brown v. Railroad*, 99 Mo. 311. The evidence shows that prior to the injury the plaintiff was strong and robust. (2) Under the law and the facts in this case no other verdict could have been rendered, and the judgment should not be reversed for any alleged errors in the instructions. *Fortune v. Fife*, 105 Mo. 433; *Vide* authorities cited *supra.* (3) The instructions given by the court below were more favorable to the defendant than was warranted by the law and the evidence.

Smith, P. J.—This was an action to recover damages for personal injuries. The cause of action alleged in the plaintiff's petition is that said "defendant by its agents and employes managed and controlled said train of cars in such a careless and negligent manner as to suddenly and with great force and violence stop

said car so that the brakeman then in the employ of the defendant and who was standing in said caboose, was caused by said sudden and violent stopping of said cars and carelessness and negligence of defendant to fall with great force and violence upon the plaintiff, whereby, etc.''

The defendant assigns for error the action of the trial court in refusing to direct the jury at the conclusion of the evidence that under the pleadings and evidence of the case the verdict should be for the defendant. The plaintiff offered evidence conducing to show that she was a passenger on one of defendant's passenger carrying trains and was injured without her fault by the sudden stoppage of the train. This was sufficient to establish the plaintiff's *prima facie* case of negligence on the part of defendant and, unless explained, justified a recovery. *Higgins v. Railroad*, 36 Mo. 419; *Hipsley v. Railroad*, 88 Mo. 348; *Furnish v. Railroad*, 102 Mo. 438. The question then is, did the evidence adduced by the defendant rebut the plaintiff's *prima facie* case? A brief reference to the defendant's evidence will, we think, be sufficient to show that this question should be resolved in the affirmative.

It appears that the train upon which the plaintiff took passage was composed of about thirty cars with caboose attached, and that between the points where the plaintiff took passage and that of her destination the face of the country is undulating. It further appears that, while the train was moving between the two points already stated, a sudden and violent ''jolt'' or ''jerk'' occurred which threw one of the defendant's brakeman, engaged in operating the train, and who was passing through the caboose, upon the plaintiff, inflicting the injuries of which she complains. It is not disputed that this occurence was caused by the lessened

speed of the engine in "crawling up the grade." As
the speed of the engine decreased, the cars following,
which continued to maintain their previous rate of speed,
overtook the engine,·thus taking up all the slack in the
train producing the jolt or jerk that pitched the brake-
man forward against plaintiff.    There is no material
disagreement in the testimony of the witnesses.    It is
true that one of them testified the opinion that it was
"rather an unusual jar," and another that it was more
violent than common on freight trains.    The plaintiff
also testified that it was "heap harder than usual."
None of these witnesses showed themselves sufficiently
qualified by experience or observation to give an opinion
as to what incidents are usual in the operation of freight
trains operated by prudent and careful employes.    We
do not think these expressions of the witnesses are of
any value whatever or constitute so much as a *scintilla*
of evidence.

    We are able to understand something of how freight
trains are made up and operated and the usual incidents
thereof by reference to the following extracts from the
testimony of the witnesses. Charles Hurst testified:
"After leaving Macon, slack runs down forward until
you get to East Fork bridge.    It is down grade to the
bridge.    When the engine takes up the slack and takes
it out, it jerks a little; in going down hill the slack of
the train would throw a person forward (because the
cars are striking the engine and that checks them), and
when the engine takes out the slack that runs up against
it, it would throw a person backward.    In going down
hill, an engine runs as fast as the cars and the slack of
the cars strike the engine when the engine begins to
run up hill.    *Q.* Then the time when the slack is run-
ning forward that way and the cars strike the engine
is when the speed of the engine is decreased in conse-
quence of going up hill? *A.* Yes, sir." James Mullinix,

for plaintiff, said: "It is nothing extraordinary for a freight train to jolt. They most always give a fellow a jolt in starting and stopping, if he is standing on his feet. Freight trains are coupled with long links and, when they start the train, by the time the slack is taken up it makes a jerk on the caboose. The caboose starts with a jerk and it is the same when you stop; the engine stops first and the caboose last, and when it stops it makes a jolt. This cannot be avoided." Hugh Salisbury, for plaintiff, testified: "The cars seemed to check up a little and the passengers fell forward and this brakeman fell over against Mrs. Guffey and raised right up again and went on. There was nothing said in the car about it. A freight train is not a pleasant one to ride on. I notice they jolt. The cars are coupled together with links and there is a slack in the freight train of twenty or thirty cars, and when the links are slacked up the cars come together." D. W. Pillars, for plaintiff, testified: "There was a sudden stoppage of the train. It shook up the passengers some and put me on my right elbow. The car was trying to run when it came up against the rest. I ride on freight trains frequently. If the train is a long one there is a jolt every time they stop and start and every time they run down a steep grade. They can't handle them like a passenger train. The cars are coupled together with long links and this gives a slack. The train that evening was a long one. Q. The jolt was such as you have frequently seen on freight trains? A. Oh, not quite so severe. I have seen them stop suddenly; only yesterday I saw a man thrown against the stove. I have frequently seen men thrown forward or backward when they are standing up in the car, especially on long trains. It occurs very frequently. The severity of the jolt depends upon the length of the train." J. M. Brown, for plaintiff, testified: "These jolts are of com-

mon occurence on freight trains. The longer the train the more severe the jerk is in stopping and starting. If men are standing up on these freight trains when the train is starting or stopping, they are likely to be thrown down if they are not on their guard." On behalf of defendant, the conductor testified: "We had thirty cars out of Macon. What is called the slack in a train is the space between the drawheads of the cars. If you stand two freight cars that are coupled up so that the drawheads strike against one another, when they are pulled apart there is generally from five to six to seven inches of space between the two drawheads, according to the length of the link, and the spring in the drawhead may increase this an inch or two. I cannot give you the number of feet in the slack of a train consisting of thirty cars, but all the slack added together would amount to several feet. The jarring motion of a train may be produced by the engine increasing the speed. In going down a steep grade the slack runs onto the engine, and when the engine starts up hill it takes the slack up because when it goes up hill the engine goes slower and the cars run onto it. Q. Is there any known way by which this can be avoided, Mr. Adams? A. No, sir; the more severe jar will occur in a long freight train of thirty cars than in a short one of eight or ten cars."

A railway company assuming to carry passengers for hire upon its freight trains is bound to exercise the same degree of care as is required in the operation of regular passenger trains, the difference being that the passenger submits himself to the inconvenience and danger necessarily attending that mode of conveyance. *Whitehead v. Railroad*, 99 Mo. 263; *McGee v. Railroad*, 92 Mo. 208; *Wagner v. Railroad*, 97 Mo. 512. In this day and age it may be fairly assumed as a fact within common knowledge that there is more or less of

violent jolting and jerking incident to the movement of long and heavy freight trains. Even on regular passenger trains, with every appliance for comfort and safety that can be devised by human skill and ingenuity, this occurs to some extent. It is made to appear quite clearly, from the few brief excerpts which we have transcribed from the evidence, that the stoppage of the freight train which caused the plaintiff's injury was only such as is usual and unavoidable in the operation and movement of such trains when under the control and management of skillful and careful employes.

It is well settled that negligence cannot be presumed when nothing is done out of the usual course of business unless the course is improper. There must be some special circumstance calling for more particular care and caution to make liability. There is nothing in the record to indicate that there was any act or any omission not incident to the constant usage of the road or indicating fault. In the light of the common knowledge and experience of mankind respecting travel by rail on freight trains, how can it be said that the evidence in this case discloses a basis for the charge of negligence? It has been said that, when something unusual occurs which injures plaintiff, but such unusual occurrence is not even inferentially the result of an unusual act of the defendant and the defendant has, so far as he is concerned, been pursuing his usual course which has heretofore been done in safety, then the unusual occurrence is what is called an accident. *Abbott v. Freeman*, 35 L. T. N. S. 783.

When plaintiff as a passenger entered the caboose attached to defendant's freight train she knew its character and the inconvenience and risk attending a passage thereon to which she would be subject. These she preferred to assume rather than wait an hour later for the regular passenger train. If under such circum-

stances an accident happened to her, as it seems there did, she cannot blame the defendant for it. The law affords her no indemnity in such case. The risk of that mode of conveyance was hers and hers only.

The plaintiff's *prima facie* case, we think, was entirely overcome and destroyed by the facts which the defendant's evidence tended to prove.

We can discover no ground of principle upon which the plaintiff is entitled to recover. The court should have given the peremptory instruction asked by the defendant. It follows that the judgment of the circuit court must be reversed. All concur.