NANCY A. DORSEY, Respondent, v. THE ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, Appellant.

St. Louis Court of Appeals, March 13, 1900.

1. **Amendment:** PRACTICE, TRIAL: STATUTORY CONSTRUCTION. An amendment to a petition may be made to conform the petition to the proof, and is permissible under section 657, R. S. 1899.

2. **Common Carriers of Passengers.** Where the defendant operated a caboose on which plaintiff was a passenger, and sold tickets to the traveling public to be carried on this train, and received and carried passengers thereon, without restriction or limitation, it was as to persons rightfully on the caboose as passengers, a common carrier of passengers, and under such circumstances plaintiff was entitled to safe carriage, regardless of whether she was a free passenger, or a pay one.

3. ———: INSTRUCTIONS: RISKS INCIDENT TO TRAVEL. The plaintiff assumes the ordinary risk incident to travel on a mixed train by taking passage thereon.

4. **Practice, Trial:** JURY, WHEN CASE SHOULD BE SUBMITTED TO. For the purpose of determining whether a case should have been submitted to the jury, the testimony on the part of plaintiff should be taken as true and every reasonable inference therefrom in plaintiff's favor should be made.

5. **Damages, Exemplary.** Exemplary damages are only given when there is on the part of defendant an unlawful act coupled with an intentional wrong.

Appeal from the Clark Circuit Court.—*Hon. Edwin R. McKee,* Judge.

REVERSED AND REMANDED (*conditionally*).

*Gardiner Lathrop, S. W. Moore, T. L. Montgomery, Cyrus Crane* for appellant.

(1) Dangers are greater on freight than on passenger trains; when, therefore, a person chooses to ride on a freight train he must not only use a greater degree of care, but is also held to acquiesce in the usual incidents of travel by that mode; and the injuries resulting from jarring and jolting of a train of that kind do not of themselves furnish a cause of action, when unavoidable, even with careful management of the train. Harris v. Railroad, 89 Mo. 233; Smotherman v. Railroad, 29 Mo. App. 265; McGee v. Railroad, 92 Mo. 208; Tuley v. Railroad, 41 Mo. App. 432; Whitehead v. Railroad, 99 Mo. 263; Bartley v. Railroad, 148 Mo. 140. (2) The sole charge of negligence, alleged in the petition, was that the engineer carelessly and negligently stopped the train. Plaintiff is confined to that charge and must make her case on it alone. Waldhier v. Railroad, 71 Mo. 514; Price v. Railroad, 72 Mo. 416, 417; Ely v. Railroad, 77 Mo. 36; Mc-Manamee v. Railway, 135 Mo. 447. (3) Inasmuch as no negligence was shown on the part of the engineer, the court should have sustained the demurrer to the evidence at the close of plaintiff's case. Bartley v. Railroad, 148 Mo. 139, 140, 141. (4) The plaintiff offered no substantial evidence of negligence on the part of defendant. Even if a *prima facie* case was made (which is not admitted) it was fully re-

butted and explained by defendant's evidence which showed, without contradiction, that the jolting of the train which caused plaintiff's injury was incidental to its operation and could not be avoided with the most careful management. Under these circumstances the court, at the close of all the evidence, should have directed a verdict for the defendant. Guffey v. Railroad, 53 Mo. App. 462; Hite v. Street Railroad, 130 Mo. 132; s. c. (on rehearing), 130 Mo. 140; Hays v. Railroad, 51 Mo. App. 438. (5) There was no allegation in the petition, nor any evidence offered to warrant the court in submitting to the jury the question of exemplary damages. Before such damages can be allowed there must be "an unlawful act coupled with an intentional wrong." Goetz v. Ambs, 27 Mo. 29; State ex rel. v. Jungling, 116 Mo. 165; Kennedy v. Railroad, 36 Mo. 365; Stoher v. Railroad, 91 Mo. 519; Welch v. Stewart, 31 Mo. App. 376; Prueitt v. Quarry Co., 33 Mo. App. 18; Nelson v. Wallace, 48 Mo. App. 201.

*Blair & Marchand* for respondent.

(1) The payment of the fare by passengers is not necessary to create the relation of passenger and carrier. It is sufficient if the party injured was on the train with the assent of the company by and through its employees and servants; although he is to be carried free, the company is liable for his injury. 2 Wood Ry. Law, sec. 298, pp. 1038, 1046 and 1110. (2) The carrier is liable for damages on freight and gravel trains where passenger pays regular fare, though the rules of the company forbid them riding on the train. 2 Wood Ry. Law, 1121-22-23. (3) Exemplary damages may be allowed upon malice, violence, oppression or wanton recklessness upon the part of defendant's servants or employees. The evidence unquestionably shows that great violence was

used in the injury of plaintiff, and that the recklessness of defendant's servants and employees was unparalleled. We doubt if in the history of railroading in this state that an instance like this can be found anywhere. It is absurd to talk about there being no violence or wanton recklessness. Exemplary damages were well warranted and justified. Kennedy v. Railroad, 36 Mo. 361; Prueitt v. Cheltenham Quarry Co., 33 Mo. App. 18; Nelson v. Wallace, 48 Mo. App. 193; Perkins v. Railroad, 55 Mo. 201. (4) In these averments carelessness, negligence and violence are averred; and the wanton recklessness of the engineer is shown by the great injury done to plaintiff, and all of which clearly prove malice. But the proof of any one of which under the authorities to paragraph number XV, entitles plaintiff to exemplary damages; as well as the authorities cited at the foot of this paragraph. Howard v. Lillard, 17 Mo. App. 228; Pierce v. Carpenter, 65 Mo. App. 191; Sloan v. Speaker, 63 Mo. App. 321.

BLAND, P. J.—The petition alleges in substance that on June 8, 1896, the plaintiff took passage from Gorin in Scotland county to Medill in Clark county, Missouri, in a car attached to one of defendant's freight trains being used for the purpose of carrying freight and passengers; that when the train reached Medill on said day and was stopped by the engineer in charge of the locomotive hauling the train, to let plaintiff out of said car and off the train, said engineer so carelessly and negligently stopped said locomotive and train and car in which plaintiff was sitting, that plaintiff was jostled and thrown forward from the seat upon which she was sitting in said car, on and against a stove, coal and wood box or other hard substance with such force and violence that her right arm, shoulder and side were greatly bruised

and injured, and two of her ribs broken loose from the right side of her breast bone or sternum, and that she is permanently injured thereby. The prayer is for both compensatory and punitive damages.

The answer was an admission of defendant's corporate existence; a general denial, and a charge of contributory negligence. The latter charge was denied by a reply filed by plaintiff. At the close of all the evidence the petition to conform to the evidence, was amended in this particular: The plaintiff alleged that the conductor of the train at the station of Wyaconda, a station reached before reaching Medill, agreed to carry plaintiff and put her off of the train at the depot at the crossing of the Atchison, Topeka & Santa Fe railroad by the Keokuk & Western railway, three hundred yards east of and beyond Medill, and that it was at this crossing the plaintiff was injured, by the careless and negligent stopping of the train by the engineer in charge. The evidence is: "The defendant company operates a railroad running through Clark county, Missouri. On its road, passing from west to east, are the following stations: Gorin, Wyaconda, Medill and Medill crossing. The latter is about three hundred yards east of Medill proper and is located at the crossing of defendant's road with the Keokuk & Western railroad, which is operated by another corporation. Different tickets at different rates were sold by defendant at the time in question, for Medill and the crossing; and a local rate of five cents was charged between the two points.

The plaintiff resides at Kahoka, which lies off from defendant's road and can be reached either by taking the Keokuk & Western at the crossing or by taking the hack which runs from Medill for the accommodation of passengers. On the morning of June 8, 1896, the plaintiff, Mrs. Dorsey, was at Gorin and purchased from defendant's agent at that point a ticket to Medill station. This entitled her to

a ride to that point only and not to the crossing with Keokuk & Western railroad.   On the same day she took passage on one of defendant's regular passenger trains and went east as far as Wyaconda.   Stopping for a time at this point, she resumed her journey in the afternoon, using the same ticket, on defendant's local freight train, which was supplied with an ordinary caboose."   The caboose was divided into compartments, the forward one being supplied with seats placed crosswise.

Plaintiff's testimony is that she had a friend, one Collins, aboard the train, who was going to Kahoka (her destination); that when she boarded the train at Wyaconda the conductor of the train at the request of Collins, agreed to carry her and Collins to the crossing east of Medill without additional fare and put them off there, so that they could board a train on the Keokuk & Western road, for their home, Kahoka; that when the train neared Medill the engine was cut loose, leaving the caboose two hundred to three hundred yards from the station, did some switching, then came back, hitched on the caboose and proceeded to the crossing without making a stop at Medill; that when the train approached near the crossing Collins left his seat and went to the forward part of the caboose and took hold of the doorknob; that she followed and when she got to the forward end of the caboose she heard a bumping noise and sat down on the front seat to the right in front of the stove; that in a moment the caboose suddenly bumped very hard and she was thrown forward from her seat against the stove or wood box and injured, two of her ribs were broken loose from the sternum, and she was otherwise bruised; that she was helped off the car and on the same evening was conveyed to her home, over the Keokuk & Western railway where she received medical attention.   Collins had died before the trial and his deposition

had not been taken.   As to the position the plaintiff was in when she was hurt, and as to the severity of the bump of the caboose, she was corroborated by M. F. King, a passenger on the train at the time of the accident.   There was no testimony contradicting the fact that she fell, and that the fall was from a jostling or bumping of the caboose, and that two of her ribs were broken loose from the breast bone.

On the part of the defendant the evidence of the conductor was that he did not agree to carry plaintiff beyond Medill to the crossing of the two roads; that the caboose was stopped at Medill in front of the station for several minutes, and that plaintiff had ample time to leave the caboose and alight at Medill; that he was not aware that she was on the train after leaving Medill; that there is a down grade from Medill to the crossing—distant about 1,000 feet; that there is about four inches between the bumpers and drawbars of cars in a freight train; that when a train is stopped on down grade this slack is taken up, by the cars "crowding upon the engine after it is stopped," that this particular train had twenty-five or twenty-eight cars, and that would give from twelve to fourteen feet of slack that would be taken up after the engine stopped and would necessarily occasion a considerable jar to the caboose; that the stop on this particular occasion was made in the usual manner and there was no unusual jar from the slack.   The conductor further testified that as soon as he discovered that the plaintiff was injured he went to her; that Collins was standing by, and when asked how it happened, stated in the presence of plaintiff, that they were standing up by the door, and when the jar came the plaintiff pitched forward against him and fell to the floor; that plaintiff made no statement at the time as to the position she was in when hurt, nor did she say anything as to the statement made by Collins.   The evidence of the conductor as to the stopping of the train, was corroborated by both brakemen

who were on top of the cars.    They testified that there was
no unusual or extraordinary jar when the train stopped, and
by the testimony of Joseph Hood, agent of defendant, as to
the taking up of slack when a freight train is stopped on a
piece of road with a down hill grade.    The engineer who was
in charge of the train did not testify, being dead at the time
of the trial.    Mrs. Dowlen, a witness for defendant, testified
that she was on the train sitting in a seat opposite plaintiff,
and that at the time plaintiff was hurt she was standing up
in the door, which was open, and that when the jar came she
fell against Collins or the door and fell to the floor, and that
she immediately went to her and helped her off the train and
onto a truck standing on the platform; that she was very ner-
vous and excited and "just like one with a hysterical fit."
This witness also corroborated the statement of the con-
ductor as to the statement of Collins; i. e., that plaintiff was
standing up when the jar came, and fell against him.    She
further testified that the shock or bump of the caboose was
not an unusually severe one for a freight train to make when
stopping.    One other passenger in the caboose at the time,
who had had considerable experience in that kind of travel,
testified that the jar was not an unusual one for that kind of
train.    King, plaintiff's witness, testified that it appeared to
him the train stopped with a considerable jar, and that it was
then suddenly jerked forward, and that he was by the last
jerk thrown forward onto the seat in his front; but he had
had but little experience in traveling on freight trains—
neither had the plaintiff.

      At the close of all the evidence and when the amended
petition was filed, the two attorneys conducting the defense
filed a motion for a continuance, on the grounds of surprise,
and in support, each of them filed their separate affidavit,
stating that defendant was taken by surprise by the amend-
ment; that as a matter of fact the conductor had no authority

to carry plaintiff beyond Medill without collecting an additional fare of five cents, and that the witnesses by whom they could prove this fact were not in attendance and could not be reached in time to have them present and testify.    The court overruled the motion, and gave for the plaintiff the following instructions, to which defendants objected and excepted, to wit:

"1.    The court instructs the jury, that plaintiff in her petition charges that defendant on June 8, A. D. 1896, upon reaching the depot at the crossing of the defendant's said railroad by the Keokuk & Western railroad in said town of Medill on said day was stopped by the engineer of defendant having charge of the locomotive attached thereto to let plaintiff get out of said car and off said train, that said engineer so carelessly and negligently stopped said locomotive, train and the said car in which plaintiff was sitting, that plaintiff was jostled and thrown forward from the seat upon which she was sitting in said car, at the time said locomotive train and car was stopped by said engineer as aforesaid, on and against a stove, coal and wood box or other hard substance with such force and violence, that her right arm and shoulder and side was greatly bruised and injured thereby and two of her ribs broken loose from the right side of her breast bone or sternum and is permanently injured thereby, and that said injuries have and are greatly injuring and interfering with her lungs, and breathing power thereof, and which injury and interference are also permanent.

"Now if the jury shall believe from the evidence that plaintiff was injured as charged in said petition as herein above set out, on said June 8, A. D. 1896, by the carelessness and negligence of said defendant's said engineer, then and in that case the jury shall find and assess her compensatory or actual damages in such sum or amount as the jury shall think

she is entitled to from the evidence, not exceeding one thousand dollars.

"2. The court instructs the jury, that if they shall believe from the evidence in the case that the engineer of defendant on said June 8, 1896, acted maliciously, violently, oppressively, or with wanton recklessness in stopping defendant's train at said Medill, then and in that case they may find such sum as they may think the evidence will warrant as exemplary or punitive damages, not exceeding nine hundred and ninety-nine dollars.

"3. That if the jury shall believe from the evidence that plaintiff was injured by the carelessness and negligence of said defendant's said engineer, as charged in plaintiff's said petition and which charges are set out in plaintiff's instruction number one (1) given by the court herein; and shall believe that her injuries are permanent, then and in that case they should take that fact into consideration in assessing compensatory damages to her; and also take into consideration the pain, anguish and suffering, mentally and physically, which she has suffered in the past or may suffer in the future therefrom."

The defendant asked the following instructions, which the court refused to give, to which ruling defendants excepted, to wit:

"A. At the close of plaintiff's evidence the court declares the law to be that plaintiff is not entitled to recover in this action.

"B. At the close of all the evidence the court declares the law to be that plaintiff under the pleading and evidence, can not recover and your verdict will be for defendant.

"C. The petition alleges that the plaintiff was injured at Medill station; and if the jury believe from the evidence, that the Keokuk & Western crossing was another and differ-

ent station and that the plaintiff was injured at said crossing, then the plaintiff can not recover.

"D.    The plaintiff in her petition does not claim to have been a passenger, or entitled to any of the rights of a passenger east of Medill station; if the jury believe from the evidence, therefore, that the injury to plaintiff occurred east of Medill station, then plaintiff can not recover.

"E.    The court instructs the jury that under the pleadings and the evidence in this case there can be no recovery of exemplary damages, and you will not allow plaintiff anything on that account.

"F.    The court instructs the jury that if you find from the evidence that plaintiff purchased from defendant a ticket entitling her to ride from Gorin to Medill, and that she was safely carried to Medill, and its train stopped there long enough to allow plaintiff to leave the train in safety, but that plaintiff did not leave the train at Medill but remained thereon without the knowledge of defendant or its agents, and was thereafter injured, then your verdict shall be for defendant.

"G.    There is no evidence in this case that the conductor on the freight train had authority to permit the plaintiff to ride from Medill station to the K. & W. crossing, without the payment of fare for such ride.

"H.    There is no evidence that any of defendant's employees knew that plaintiff was on the train in controversy between Medill station and the K. & W. crossing."

The court gave for defendant nine instructions, which it is not necessary to set forth in this opinion. The jury returned a verdict for plaintiff assessing to her $700 as compensatory damages and $200 as exemplary damages. After unavailing motions for new trial and in arrest of judgment defendant appealed.

I.    We discover no error in the action of the court by

refusing to continue the cause on account of the amendment made to the petition.    The amendment was made to conform the petition to the proof, and was permissible under section 657, R. S. 1899.    The caboose on which plaintiff was a passenger was arranged for the especial purpose of carrying passengers, and the defendant sold tickets to the traveling public to be carried on this train, and received and carried passengers thereon, without restriction or limitation so far as the evidence shows, it was therefore as to persons rightfully in the caboose as passengers, a common carrier of passengers.    2 Wood on Railways, sec. 297a.    Being a common carrier of passengers, it is wholly immaterial to the defense whether plaintiff was permitted by the conductor to ride from Medill to the crossing or not, without the payment of additional fare of five cents, or whether he was authorized to permit her to ride free or not.    If he had no such authority, and the presumption is that he did not, his duty was to collect the additional fare; his failure to do so, did not discharge the defendant from its obligation to use due care toward her as a passenger; she rightfully entered the caboose and became a passenger, and so long as she remained under the control of the carrier, she was entitled to safe carriage, regardless of whether she was a free passenger or a pay one. Wood on Railroads, p. 1207, note 2.

II.    Appellant insists that there was no substantial evidence that the engineer carelessly and negligently stopped the train, and that plaintiffs *prima facie* case, if made, was so overcome by positive testimony that there was no negligence, that the court should have instructed the jury to find for defendant.    There was no direct and positive proof that the engineer was guilty of negligence.    Negligence, like any other question of fact, may be proven by facts and circumstances, in the absence of direct or positive testimony, and we may look backwards from a known effect to discover the

cause. The effect in this instance, according to respondent's testimony, was that by a sudden jerk of the car or a sudden and violent concussion against another car, she was thrown from a sitting position on the front seat in the caboose forward onto a stove or wood box, with such force and violence as to break two of her ribs loose from her breast bone. She is corroborated as to the force by which the caboose was jerked or bumped by the testimony of King, who was himself thrown forward onto the seat in front of him by the same force. But the appellant contends that King's evidence does not corroborate respondent, and that his testimony, if it proves anything, tends to prove an act of negligence not alleged in the petition, to wit, that the car was jerked by the engine moving up, and not jarred in stopping the train. This argument is more specious than sound. The evidence all shows that the accident occurred while the engineer was making a stop at the crossing; he may have found that he had stopped his engine too soon to allow passengers to get off at the platform and before the slack was all taken up moved the engine suddenly forward a short distance so as to place the cars in the train where they were wanted. With reference to the depot and platform, if King's testimony is correct as to the movements of the train at that particular time, this is what the engineer did do, but whatever he did was with the view and for the purpose of making the stop, and whether the engine moved forward after first stopping and gave the caboose a jerk, or whether it did not and the violence was from taking up the slack of the train, it occurred in making the stop. If the testimony of the plaintiff is to be believed, the jerk or bump of the caboose, which threw her forward, was an unusual and extraordinary one, dangerous to life and limb of persons on the caboose at the time. The stopping of the train was under the control of the engineer, and the inference reasonably to be drawn from plaintiff's testimony is,

either that he neglected to do what he should have done to prevent so violent a stop, or that he did something which he should not have done to occasion the violence in making the stop; either the one or the other would be negligence. The testimony of the conductor and the two brakemen on the train at the time, was that there was no unusual bumping or jerking of the train when the stop was made; that the stop was made with as little bumping as was practicable with a train of twenty-five to thirty cars. Two of the passengers, both of whom had a good deal of experience in traveling on freight trains, testified that the stop was made as such stops are usually made and with no unusual jerking or bumping. Evidence was also introduced by defendant to prove the well-known fact, that long freight trains running on a down grade can not be stopped with the appliances in general use, without taking up a good deal of slack, which necessarily and unavoidably occasions more or less bumping of one car against another. The preponderance of the testimony seems to be with the appellant that there was no unusual jerking or bumping of the caboose, and hence no negligence; but we are not dealing with the facts any further than we are authorized; i. e., to determine whether or not respondent's *prima facie* case was entirely overcome by appellant's testimony. The ordinary risk incident to travel on a mixed train, as the court correctly instructed the jury, the plaintiff assumed by taking passage thereon. Bartley v. Railway, 148 Mo. loc. cit. 140; Harris v. Railway, 89 Mo. 233; McGee v. Railway, 92 Mo. loc. cit. 217; Tuley v. Railway, 41 Mo. App. 432. Neither the plaintiff, nor her witness King had had sufficient experience in travel on this kind of a train, as to be able to testify as experts, that the jar or jostle of the train was greater than ordinary when the stop was made, and the only evidence on the part of the respondent that the jar or jostle was out of the ordinary which we can consider, is the fact of the injury

and the circumstances under which it was inflicted. For the purpose of determining whether the case should have been submitted to the jury, the testimony on the part of the respondent should be taken as true and every reasonable inference therefrom in plaintiff's favor should be made. Harris v. Railway, 89 Mo. 233; Frick v. Railway, 75 Mo. 595. Buesching v. Gas Light Company, 73 Mo. 219. Applying this rule to the facts in plaintiff's favor and making the deductions reasonably inferable therefrom, there was evidence which authorized the court to submit the issues to the jury. The plaintiff was sitting on a seat, the jerk or jar was of such force as to throw her out of her seat forward onto the stove or wood box in front of her with sufficient violence to dislocate two of her ribs from her breast bone. King was also pitched forward from his seat onto the one in front of him. The force which caused the plaintiff to be thrown forward from her seat and caused the injuries she received, was not caused by the ordinary jostling incident to stopping a freight train on a down grade. To so hold, would be to judicially declare, that the ordinary experience of passengers on this kind of a train, is to be thrown out of their seats, and to be bruised and have their bones broken by the stopping of these trains, under prudent and careful management. Such is not the fact, and the court correctly submitted the case to the jury.

This case is distinguishable from the case of Guffey v. Railway, 53 Mo. App. 462, in this: In the Guffey case a passenger was injured by a brakeman falling upon her, who had been thrown from his feet by the jostle of a freight train in making a stop. In the case at bar the respondent was thrown from her seat, and thrown with such force against the stove or wood box as to break her ribs, showing that the violence of the jerk or jostle in the case at bar was much greater than in the Guffey case.

The case of Hite v. Railway, 130 Mo. 132, cited and relied on by appellant has no application to the facts in the case at bar. To attribute the injury to plaintiff as a mere accident—as an unusual occurrence happening in the usual course of stopping a freight train—in our view of the circumstances surrounding and characterizing the happening of the injury, would be unreasonable. If the plaintiff had been thrown while in an unsafe position—had she been on her feet —this inference could and should be drawn; or had she simply been jostled from her seat, it might be drawn; but it can not be drawn in view of the violence with which she was pitched forward out of her seat. This view disposed of the refused instructions asked by appellant, and the court committed no error in refusing them.

III. Instruction number 2 given for plaintiff is clearly erroneous. There is no allegation in the petition to warrant an instruction for exemplary damages; nor is there a line of testimony in the record tending to show that the engineer acted wantonly, maliciously or unlawfully with the intent to do wrong or to injure the passengers on his train. Exemplary damages are only given where there was an "unlawful act coupled with an intentional wrong." State ex rel. v. Jungling, 116 Mo. loc. cit. 165, and cases cited.

IV. After appellant had rested, the respondent was called as a witness in rebuttal, and was permitted, over the objection of appellant, to repeat a portion of her testimony given on her examination in chief. This was unfair, and can not be too strongly condemned, as it is opposed to an old and well-settled rule of practice; but it is not reversible error, for we can not say that it prejudiced the substantial rights of appellant. The repetition of her testimony by respondent added nothing to its probative force, and we can not presume from the fact that she was permitted to repeat, that the jury gave undue weight to it because twice told.

On account of the error in the assessment of exemplary damages by the jury, the judgment will be reversed and cause remanded, unless the respondent within ten days enters a remittitur of two hundred dollars (the exemplary damages assessed) from her judgment. If the remittitur be entered as herein provided, the judgment of $700 compensatory damages, which we find not to be excessive, will be affirmed. All concur.