BELL RHODES, Respondent, v. MISSOURI PACIFIC RAILROAD COMPANY, a Corporation, Appellant.

St. Louis Court of Appeals. Opinion Filed November 6, 1923.

1. **NEGLIGENCE: Railroads: Passenger Injured: Res Ipsa Loquitur Doctrine: Petition: Sufficiency.** A petition charging that the agents, servants and employees of the defendant in charge of and controlling the train, so carelessly, unskillfully, and negligently operated the same that after plaintiff had entered the door of the

coach, said agents and servants negligently, and carelessly caused said train to suddenly and violently jerk, with unusual and unnecessary force, and by reason thereof plaintiff was injured. charges general negligence, authorizing the application of the doctrine of *res ipsa loquitur*.

2. **COURTS: Decisions: Conflict: Duty of Court of Appeals to Follow Last Controlling Decision of Supreme Court.** Where there is a conflict between the decisions of the Court of Appeals and the Supreme Court, it is the duty of the Court of Appeals to follow the last controlling decision of the Supreme Court upon the question.

3. **NEGLIGENCE: Railroads: Passenger Injured: Sudden and Violent Jerk of Train: Burden of Proof.** The cause of a sudden and violent jerk with unusual and unnecessary force, if such an event happened, was one peculiarly within the knowledge of defendant, and the burden shifts to the defendant carrier to show that such an event, resulting in injury to a passenger, was not the result of the carrier's negligence.

4. ———: ———: ———: **Evidence: Plaintiff Permitted to Testify Sudden Jerk Threw Her Down: Not Error.** It was not error to permit plaintiff to testify that an unusual jerk of the train threw her down and against the arm rest of a seat, inflicting injuries, because plaintiff was asked to tell the jury with what force this jerk was made and if she knew she had a right to so state, there being no motion to strike out any part of the answer, and, in addition thereto, plaintiff had theretofore related the same transaction without any objections.

5. ———: ———: ———: **Sudden and Violent Jerk of Train: Evidence: Question for the Jury.** In an action for damages for personal injuries alleged to have been sustained by plaintiff, whilst a passenger on one of defendant's trains, by being thrown against a seat, caused by a sudden and violent jerk of the train, evidence *held* sufficient to take the case to the jury.

6. ———: ———: ———: **Passengers Not Seated: Duty of Carrier.** While a carrier of passengers is not bound to wait in all cases until passengers are seated before starting his car, yet he owes them the duty of either waiting a reasonable time for them to be seated, or of starting the car with a gradual motion so as not to throw them down.

7. **DAMAGES: Excessive Damages: $5500 Not Excessive for Fractured Collar Bone and Permanent Injury to Right Arm.** A verdict for $5500 was not excessive where plaintiff sixty-two years old suffered an oblique fracture of the collar bone, and an injury to

the right shoulder, causing neuritis and a permanent injury to the right arm, and her permanent injuries disabled her from continuing the duties which she had been accustomed to perform.

Appeal from the Cape Girardeau Court of Common Pleas.—*Hon. John A. Snider,* Judge.

AFFIRMED.

*James F. Green* and *J. C. Sheppard* for appellant.

(1) The court erred in permitting witnesses for respondent to give conclusions and opinions as to the unusual jerk of the train. Jones on Evidence (2 Ed.), sec. 359; Elliot v. Chicago M. & St. P. Ry. Co., 236 S. W. 17. (2) The court erred in giving to the jury respondent's instruction No. 1, for the following reasons: (a) The petition pleads specific acts of negligence, and therefore the doctrine of *res ipsa loquitur* does not apply to this case. Bobbitt v. Railroad, 169 Mo. App. 424; Grimm v. Globe Printing Co., 232 S. W. 676; Elliott v. Chicago, M. & St. P. Ry. Co., 236 S. W. 17; Smiley v. Kenney, 228 S. W. 857; Pointer v. Mountain Ry. Const. Co., 269 Mo. 104; Laycock v. United Rys. Co., 227 S. W. 883. (b) The *res ipsa loquitur* doctrine not being applicable, the instruction erroneously places the burden on appellant to prove that it was not negligent. (See authorities cited under point 2-a.) (3) The court erred in refusing to give to the jury appellant's instructions in the nature of demurrers to the evidence at the close of respondent's case and at the close of the whole case, for the reason that there was no evidence upon which to base a verdict for respondent. Elliott v. Chicago, M. & St. P. Ry. Co., 236 S. W. 17. (4) The court erred in refusing to grant appellant's motion for new trial, because the verdict is excessive. Lundahl v. Kansas City, 209 S. W. 564; Honeycutt v. St. L. I. M. & S. Ry. Co., 40 Mo. App. 675; Adams v. Street Ry. Co., 174 Mo. App. 5; Sawyer v. Han. & St. Jo R. R., 37 Mo. 246, 247.

*Abington & Abington* for respondents.

(1.) Appellant's first complaint with the action of the trial court is that the court erred in permitting witnesses for respondent to give conclusions and opinions as to the unusual jerk of the train. It has been declared by the decisions of the courts in this State that the character of testimony here complained of hardly comes within the rules of expert testimony; that where the witness is shown to have had considerable experience in riding upon passenger trains and had the means of observing, such witness would be qualified to give an opinion as to the unusual movement of the train. This character of testimony is fully discussed in the following authorities: Daniels v. St. L. I. M. & S. Ry. Co., 181 S. W. 599; Stotler v. Chicago & Alton Ry. Co., 200 Mo. 107; Lawson on Expert and Opinion Evidence (2 Ed.), p. 505. (2) (a) This case was brought and tried on the theory that respondent was a passenger in one of appellant's passenger trains, and was injured by reason of the happening of something unusual in the operation of the train (a sudden and violent jerk, with unusual and unnecessary force), which the law called upon appellant to explain. The petition alleging general negligence, the doctrine of *res ipsa loquitur* applies. Coudy v. The St. L. I. M. & S. Ry. Co., 85 Mo. 79; Brisco v. Met. Street Ry. Co., 222 Mo. 104; MacDonald v. Met. Street Ry. Co., 219 Mo. 469; Price v. Met. Street Ry. Co., 220 Mo. 443; Stauffer v. Railroad, 243 Mo. 313; Bergfeld v. K. C. Ry. Co., 285 Mo. 654; Brady v. Springfield Traction Co., 140 Mo. App. 421; Lemon v. Chanslor, 68 Mo. 354; 10 Corpus Juris, p. 1023, 1025. (b) The jury was required by respondent's instruction No. 1, to find as true the allegations of her petition, that is, that respondent was a passenger, and by reason of the negligent operation of the train, it gave a sudden and violent jerk with unusual and unnecessary force and as a result thereof she was thrown down with great force and injured, and having so found, the jury was very

properly told in instructions that it was the duty of the appellant to show that such sudden and violent jerk could not have been prevented by the exercise on its part of the utmost care, skill and vigilance. Coudy v. St. L. I. M. & S. Ry. Co., 85 Mo. 79; Elliott v. Chicago, M. & St. P. Ry. Co., 236 S. W. 17. (And see authorities under point 2a.) (3) Under this point appellant in its brief charges the court with committing error in refusing to give to the jury its instructions in the nature of demurrers to the evidence at the close of respondent's case and at the close of the whole case. Respondent, under the facts of this case, was entitled to have her case go to the jury; and it would have been error for the court to have given to the jury the instructions asked by appellant. Coudy v. St. L. I. M. & S. Ry. Co., 85 Mo. 79; Daniels v. St. L. I. M. & S. Ry., 181 S. W. 599; Burkett v. Mo. Pac. Ry., 208 S. W. 104; Elliott v. Chicago, M. & St. P. Ry. Co., 236 S. W. 17. (4) The verdict of the jury is not excessive and the court therefore properly overruled appellant's motion for new trial on this assignment of error. Jackman v. St. L. & H. Ry., 231 S. W. 978; Hinkle v. Chicago, B. & Q. Ry. Co., 199 S. W. 227; Hulse v. St. Joseph Ry. Co., 214 S. W. 150.

NIPPER, C.—This is an action for damages for injuries alleged to have been sustained by plaintiff on March 20, 1921, immediately after she had become a passenger on one of defendant's passenger trains, at Platow Station, in Wayne County, Missouri. She boarded the northbound train at that point on her way to Des Arc, in Iron County, and just after boarding the train, and while on the way from the door of the coach to a seat, she claims to have been injured by the sudden and violent jerk of the train, which threw her with great force against the floor, breaking and injuring her clavicle or collar bone, and also bruising her arm and back. The petition alleges, as negligence of the defendant, that "when the agents, servants and employees of said defendant, in charge and control of said passenger train,

disregarding their duty to this plaintiff as such passenger, so carelessly, unskillfully and negligently, managed and operated said train, that immediately after plaintiff had entered the door of the coach in the said train on which she was taking passage, and before plaintiff could become seated and while walking in the aisle or passage way to a seat in said car of said train, the defendant's agents and servants in charge of said train, negligently and carelessly caused said train to suddenly and violently jerk with unusual and unnecessary force, and by reason thereof plaintiff was suddenly and violently thrown down with great force against the floor and against the arm and back of a seat and other parts of the car in which she was a passenger, and thus and thereby and then and there and as a direct result of the negligence and carelessness of defendant, its agents and servants, plaintiff was greatly and permanently injured,'' etc.

The answer was a general denial.

Plaintiff obtained judgment for $5,500, and defendant appeals.

Plaintiff, who was sixty-two years old at the time, had been to visit her sister in Reynolds County, and on her return home she was brought to this station by her nephew, Henry Howard. They made the trip in a hack or buggy, and reached Platow Switch, a small flag station on defendant's line of railway, between twelve and one o'clock. The nephew, Howard, flagged the train, which stopped at the station, located at the foot of a grade extending north. When the train stopped, plaintiff boarded the same, followed by Howard, who was assisting her. About the time she entered the door of the train and started walking south to a seat in the chair car, the train gave a sudden lurch or jerk and threw her down in such manner as to cause her injuries. She testified that she had ridden on this railroad at intervals ever since it had been built; that she was only a little child when it was finished. Over the objections of defendant's counsel, she was permitted to describe the incident in the following language:

"When I was getting near the seat the train gave an unusual jerk and threw me down. I could not stand there at all and I could not catch to anything to stand up. I had my traveling bag in my right hand, and it jerked it out of my right hand and I caught in such a way that my arm and shoulder went inside the arm of the seat. I fell to my knees; it just threw me to my knees, which struck on the floor. When I got up and sat down and happened to notice my hand bag, it was out like that from me (indicating), and I reached and pulled it back and set it up.

"The reason I did not make complaint of my injury at that time to the conductor or auditor when they took up my fare was that I did not realize that I was hurt. It seemed like I was numb until I did not realize. I thought it was a little fall and I would get over it; I thought I would get over it. If there was any one on that train that I knew, I don't know it. Since that time I have not learned of any one who was a passenger on that coach whom I knew. This accident happened on a Sunday."

On cross-examination plaintiff stated that she had picked up her traveling bag at the front end of the coach as she entered. The train was going north, and she started south into the "ladies' coach," and had selected about the fourth seat from the end of the car in which she was injured, this being the first seat that was empty; that the train gave a sudden jerk and caused her to fall forward on the arm of the seat, jerking the traveling bag out of her right hand, and throwing her to her knees.

Henry Howard, plaintiff's nephew, went behind her on the train, and, after stepping inside the door of the coach, he set plaintiff's grip down and told her good-by. The train started quickly. The brakeman, who was coming on the train behind him, turned to the north car. As witness started to step off the train, it jammed and gave a hard jerk. He caught against the south side of the car before he got off the step. He said it was about as hard a jerk as he ever had. It threw him north, and then jerked him south; that it would have jerked him down if he had not caught hold of the car. Witness testified that he had ridden on trains all his life; that he was

thirty-one years old; that he had experienced the usual and ordinary jerks upon trains. As soon as he straightened up, he jumped off the train. He did not know that plaintiff was injured until about two weeks later.

Plaintiff made no complaint of her injuries to the conductor or any one else on the train because she says she did not know she was hurt. She went on to her destination at Des Arc, and from there she walked to her home about three-fourths of a mile distant. About the 8th of April following, she called at the office of Dr. Farr at Des Arc for treatment. He testified that he found an oblique fracture of the right clavicle. He placed the bone in apposition, and bandaged her arm and shoulder. He found no other injury, nor looked for any. After that he saw her at her home, and made a partial examination of her on two different occasions. He testified that she had very little mobility of the right shoulder joint, and complained of pain. This last examination was made more than a year after he had treated plaintiff for the broken clavicle. After he treated her the first time, she went to St. Louis and took a series of treatments at Barnes Hospital for five or six weeks. She testified that she was unable to sleep on her right side; that sometimes she could ease herself a little by taking a small pillow and resting her arm and shoulder on that, and by use of a hot water bottle and hot cloths. Dr. Farr testified that the loss of the use of the right arm was permanent.

At the close of plaintiff's case, defendant asked for an instruction in the nature of a demurrer, which the court refused to give.

Dr. Rowe, witness for defendant, testified that he had examined plaintiff at the request of Judge Sheppard, defendant's counsel, and found her collar bone in good condition, with no evidence of any fracture of the clavicle; that he found a limited motion of the right arm, and evidence of pain, probably neuritis; that the chances were the condition would improve to some extent, but there would be some permanent injury there; that he did not think the stiffness of the arm was caused by the fracture of the collar bone; that he found evidence of

neuritis, and that such could be caused by an injury to the shoulder.

William True, who was conductor of, and in charge of the train on which plaintiff claims to have been injured, testified that there was nothing wrong with the train, and that no complaint was made by any one on that trip about getting hurt.

J. T. Walker, the fireman, testified that there was nothing wrong with the engine on that day, and that they had no trouble at that point; that there was nothing unusual in any way about the starting of the train from Platow that was ever called to his attention on that day. He testified that if the engineer had opened his throttle and the train had made a lurch, that would have been what he would call a violent jerk, and may cause a jerk in the train at the point where plaintiff boarded the car; that it would depend upon the condition of the train. When asked if a jerk sufficient to have thrown a person down would not have been an unusual jerk on this train, he answered: "That might depend upon the condition of the person."

Clarence Matthews, who was brakeman on this train on that day, testified that the time was so distant that he did not remember any unusual occurrence; nobody made any complaint to him, and he did not remember whether any one boarded the train at Platow on that day; that he remembered no unusual jerk of any kind at that time; that the train always jerked more or less in stopping and starting.

The train auditor on this train testified that he remembered nothing about any extraordinary jerk, or anything happening at that point on that day.

One witness testified that plaintiff's reputation for truth and veracity was not good, but said: "I don't know as I particularly know what veracity is."

At the close of the whole case, defendant again asked for an instruction in the nature of a demurrer, which the court refused to give.

The principal errors urged by defendant as ground for reversal are: (a) That the petition pleads specific

acts of negligence, and the doctrine of *res ipsa loquitur* does not apply; (b) that the instructions offered by defendant in the nature of demurrers should have been given; and (c) excessiveness of the verdict.

Taking up, first, the question of whether or not the petition charges specific acts of negligence, we must hold, under the authorities hereafter referred to, that the petition charges general negligence, authorizing the application of the doctrine of *res ipsa loquitur*. We have heretofore set out the charging part of the petition *in haec verba*. This part of the petition merely charges that the agents, servants, and employees of the defendant in charge of and control of the train, so carelessly, unskillfully, and negligently operated the same that, after plaintiff had entered the door of the coach, said agents and servants negligently and carelessly caused said train to suddenly and violently jerk with unusual and unnecessary force, and by reason thereof plaintiff was injured. A comparison of the charge in this petition with those in the cases of Briscoe v. Metropolitan St. R. Co., 222 Mo. 104, 120 S. W. 1162, Price v. Metropolitan St. R. Co., 220 Mo. 435; 119 S. W. 932; Stauffer v. Metropolitan St. R. Co., 243 Mo. 305, 147 S. W. 1032, and Bergfeld v. Kansas City Rys. Co., 285 Mo. 654, 227 S. W. 106, justifies and authorizes us in taking the view we do with respect to the petition in this case.

In the case last cited, our Supreme Court sets out the petitions in the other cases cited, where, in each instance, it was held that the petition charged general negligence, and not specific negligence. The Price case was an opinion by the Supreme Court in Banc; the Stauffer case was an opinion in Division No. 1, concurred in by all members of that division; and the Bergfeld case is an opinion in Division No. 2, concurred in by all the members of that division. If this petition had alleged the negligent management and operation of its train, and that it suddenly and violently jerked with unusual and unnecessary force, and had then proceeded to name or point out the negligence of the defendant which

brought about or caused this condition to exist, then it may be said that the petition charged specific negligence.

The defendant relies, among others, upon the case of Bobbitt v. Railroad, 169 Mo. App. 424, 153 S. W. 70, an opinion by this court. The petition in that case alleged that, while plaintiff stood in a position to alight from a street car when the same had been brought to a stop, and while so waiting for said car to be stopped, and after the speed of the car had been reduced to a very slow rate, the defendant's employees, without bringing the car to a stop so as to enable her to alight, "negligently, suddenly, and violently started said car forward at an increased speed, thereby causing plaintiff to be jerked, jarred, and thrown from said car to the street." We think the petition in the Bobbitt case distinguishes it from the case at bar, and if it cannot be distinguished it cannot be followed in that respect, because it is our duty to follow the last controlling decision of the Supreme Court upon this question. The cause of the sudden and violent jerk with unusual and unnecessary force, if such an event happened, was one peculiarly within the knowledge of the defendant, and the burden shifts to the defendant carrier to show that such an event, resulting in injury to a passenger, was not the result of the carrier's negligence. [Guffey v. Hannibal & St. J. Ry. Co., 53 Mo. App. 462; Stauffer v. Railroad, supra.]

It is next urged that the court should have given the peremptory instruction offered by defendant at the close of the plaintiff's case and at the close of the whole case, because there was no evidence upon which to base a verdict for respondent. In support of this contention, defendant relies upon the case of Elliott v. Chicago, M. & St. P. Ry. Co., — Mo. —, 236 S. W. 17. Defendant insists that there was no competent evidence to show that this movement of the train which threw plaintiff against a seat and injured her was a violent or unusual movement and one not ordinarily incident to the operation of trains.

In Elliott v. Railroad, supra, plaintiff, a married woman, was a passenger on one of defendant's passenger trains from Chicago to Kansas City. About twelve o'clock at night the train had stopped, and plaintiff had gone forward to get a drink of water. When returning to her seat she testified there was a sudden starting or moving of the train, an awful jolt and jar; that it threw her against the side of the seat, injuring her. She also testified she had "ridden on the train a lot," and that this was the worst jar she had ever witnessed on a train; that it was a very unusual jar. In discussing that case, the court said:

"The affirmation that there was an unusual jerk or movement of the car finds its sole support in the evidence on the testimony of the plaintiff. In that respect she is uncorroborated by a single fact or circumstance. The premature birth of the child affords no proof that there was a violent and unusual movement of the car. That was an occurrence that might have been brought about by any one of many cases, or by no discoverable cause, or by the ordinary and usual movements of the train."

It was held that the description of the movement of the car contained in the expressions of plaintiff carried no definite meaning, nor were they of any probative value, because she was not sufficiently qualified by experience to give an opinion. However, the whole matter was disposed of, so far as this phase of the case was concerned, by the testimony of the conductor in charge of the train, who testified that any jar or jolting on that train sufficient to throw a passenger down was very unusual and extraordinary.

We think the facts distinguish this case clearly from the Elliott case. Here the evidence discloses that there was an injury sustained by plaintiff at the time, as her collar bone was fractured, and she sustained an injury to her right shoulder, causing a permanent injury to the right arm. This was not an occurrence which would be brought about by the ordinary and usual movements of the train. Plaintiff testified that this movement of

the train threw her down and against the arm rest of a seat, inflicting the injuries above stated. This testimony of plaintiff was given over the objections of defendant's counsel, but the question asked by counsel for plaintiff was not objectionable, because plaintiff was asked to tell the jury with, what force this jerk was made. If she knew, she had a right to so state. There was no motion to strike out any part of the answer, and, in addition thereto, plaintiff had theretofore practically related the same transaction without any objections. She testified without objections that she had ridden over this railroad ever since it had been built; that when it was built she was a small child. Howard, her nephew, who had brought her to the station and aided her in boarding the train, testified that he was thirty-one years old; that he had worked on a railroad bridge gang at Hoxie for three months two years prior to the trial, and rode on the train two hundred miles every week for three months. He testified without objections that it was about as hard a jerk as he had ever seen; that in attempting to get off the train it jerked so hard that it threw him against the side of the car, where he would have gone down had he not caught hold of the car. The positive statement of plaintiff that she was thrown to the floor and against the arm of a seat in the train with such force as to cause the injuries which she sustained, together with the statement of the witness Howard that it threw him with such force against the side of the car that he would have fallen had he not caught, was sufficient to take the case to the jury.

In Dougherty v. Railroad, 9 Mo. App. 478, it is said that a carrier of passengers, though not bound to wait in all cases until passengers are seated before starting his car, yet he owes them the duty of either waiting a reasonable time for them. to be seated, or of starting the car with a gradual motion so as not to throw them down. This case was affirmed by the Supreme Court, and has been cited with approval since by both. the Supreme Court and Court of Appeals. [Coudy v. Railroad,

85 Mo. 79; Burkett v. Missouri Pacific R. Co., — Mo. App. —, 208 S. W. 104.] We must therefore rule this contention against defendant.

It is finally insisted that the verdict is excessive. The injuries which plaintiff received have been heretofore referred to in detail. Plaintiff suffered an oblique fracture of the clavicle or collar bone, and an injury to the right shoulder causing neuritis and a permanent injury to the right arm. She lived upon a farm with her husband, and prior to her injuries did all her housework, including the washing, worked in the garden, milked the cow, as well as other work on the farm. This injury, of course, being permanent, will disable her from continuing the duties which she had been accustomed to perform.

Learned counsel for both plaintiff and defendant have very ably briefed every question raised on this appeal. We have carefully considered each of them, and are constrained to hold that this verdict is not excessive. As an illustration where larger verdicts have been sustained where injuries were received which were but little more serious, if any, than those which plaintiff sustained, see Jackman v. St. Louis & H. Ry. Co., — Mo. —, 231 S. W. 978, and Hinkle v. C. B. & Q. R. Co., — Mo. —, 199 S. W. 227.

Finding no reversible error in the record, the Commissioner recommends that the judgment be affirmed.

PER CURIAM:—The foregoing opinion of NIPPER, C., is adopted as the opinion of the court. The judgment of the circuit court is accordingly affirmed. *Allen, P. J., Becker* and *Daues, JJ.,* concur.