E. P. BARRETT, Appellant, v. THE WESTERN UNION
TELEGRAPH COMPANY, Respondent.

St. Louis Court of Appeals, December 9, 1890.

1.	**Telegrams :** FAILURE OF TRANSMISSION : EFFECT OF EVIDENCE.
Proof that a telegram was not received at the place, to which it
was addressed, is evidence that the message was not started on its
way to such place.

2.	——— : ——— : LIMITATION OF RECOVERY OF DAMAGES.   A printed
condition on a blank for telegrams, invalidating claims for dam-
ages, unless presented " within thirty days after sending the mes-
sage," being in the nature of a forfeiture, must be strictly construed,.

and the evidence must bring a case within its very letter to render it applicable. *Held*, accordingly, that such limitation does not apply, when the message was not transmitted or started on its way over the wires.

3. **Damages, Special:** PLEADING. Special damages are those which the law does not imply. They must be pleaded with particularity.

4. **Telegrams:** FAILURE OF TRANSMISSION: DAMAGES. Only such damages can be recovered for the failure of a telegraph company to transmit a telegram as may fairly and substantially be considered as arising from such failure, according to the usual course of things, or as may reasonably be supposed to have been contemplated by both parties to the contract, when the contract was made.

*Appeal from the St. Louis City Circuit Court.*—HON. JAMES E. WITHROW, Judge.

REVERSED AND REMANDED.

*Frank, Dawson & Garwin*, for appellant.

· The stipulation in the message being, "that no claim for damages shall be valid unless presented in writing within thirty days after sending the message," such notice is not necessary where the message is not sent. *Tel. Co. v. Yopst*, 118 Ind. 249 ; 20 N. E. Rep. 222 ; *Tel. Co. v. Way*, 83 Ala. 556 ; 4 S. Rep. 844.

*Dickson & Smith*, for respondent.

·BIGGS, J.—This is an action against the telegraph company for damages for the failure to transmit or deliver the following message, delivered to the defendant's agent at Denison, Texas, on the night of the eighteenth of October, 1888 :

" *To Holt, Payne & Co., Union Stock-Yards, St. Louis, Mo.:*

" Have your bank to notify First National Bank of Denison to pay draft for seven hundred and fifty-six dollars Friday ; will ship three loads.

" ( Signed )          E. P. BARRETT."

This message was written by the plaintiff on one of the defendant's blanks ; among the printed conditions and stipulations on which was the following : "And that no claim for damages shall be valid, unless presented in writing within thirty days after *sending the message.*" The allegation of negligence in the petition was "that the defendant, unmindful of its duty and of its obligation to plaintiff, negligently and carelessly failed either *to transmit or to deliver* said message to said Holt, Payne & Co." In the statement of the damages suffered by the plaintiff on account of the failure to send the message, it was averred that the plaintiff was engaged in the business of buying cattle in the state of Texas for shipment to the St. Louis market ; that, on the fifteenth day of October, 1888, he had bought one hundred and forty-six head, which were to be delivered to him at Sherman, Texas, in time for shipment on the twentieth of the month ; that he paid part of the purchase money for the cattle, and expected to finish paying for them out of the proceeds of the draft mentioned in the telegram ; that, on account of the failure to send the message, the Texas bank refused to cash his draft on Holt, Payne & Co.; and that, by reason of this, the plaintiff was unable to pay for and ship the cattle until the twenty-third day of October. After alleging several items of damage, such as feeding, shrinkage, etc., the petition contained this averment : "That, but for the said negligence and carelessness of the defendant, plaintiff could and would have sold said cattle in St. Louis, on, to-wit, the morning of Wednesday, October 24, for two and forty-hundredths ( $2.40 ) dollars, and two and twenty-five-hundredths ( $2.25 ) dollars per one hundred pounds; that said cattle were sold as soon as they arrived in St. Louis, to-wit, on Monday of the following week, October 29, at one and seventy-hundredths dollars and two ( $2 ) dollars, which was the highest obtainable market price at that time ; whereby plaintiff suffered great additional loss in the sum of,

to-wit, four hundred and five and thirty-four-hundredths dollars ( $405.34 )."

The defendant by its answer first denied all allegations of the petition, except the delivery of the message. By way of special defense, that portion of the printed matter on the message was set forth, and that was followed by this averment: "Defendant avers that no claim for damages for failure of defendant to deliver said message, or for any other alleged failure or neglect of defendant in relation to said message, was presented to defendant in writing by plaintiff, or any other person, within thirty days *after said eighteenth day of October, 1888.*"

The plaintiff's reply put in issue the new matter stated in the answer ; the cause was submitted to the jury, and, at the close of the plaintiff's evidence, the court at the instance of the defendant gave an instruction that, under the pleadings and evidence, the plaintiff could not recover. The plaintiff submitted to a voluntary nonsuit, and the court, refusing subsequently to set the nonsuit aside, has prosecuted an appeal to this court.

The bill of exceptions does not purport to contain all of the plaintiff's evidence. Only that portion bearing on the controverted questions has been preserved in the transcript. The contentions of the plaintiff are : *First.* That he did deliver to the defendant's agents in St. Louis a sufficient written statement of his claim ; *second,* that the company, by its conduct towards him, waived the necessity of a written claim ; *third,* that, as the defendant failed to send the message, it could not avail itself of this provision in the contract so as to defeat plaintiff's action. There is also a controversy concerning the extent of the plaintiff's damages. This question is presented by the pleadings, and by exceptions saved to the rejection of evidence. As before stated, the evidence contained in the record only bears on the negotiations between the parties in reference to an adjustment

VOL. 42—35

of the claim, and the measure of the plaintiff's damages, as limited by the pleadings. We, however, find this statement in the bill of exceptions: "It is admitted that there was evidence tending to prove all the other issues on behalf of the plaintiff under the pleadings, and that, as to the issues to which the foregoing testimony was applicable, the said testimony was all the evidence in the case."

Under our view of the law applicable to the third proposition, it will not be necessary to discuss the sufficiency of the plaintiff's evidence in support of the first and second. It will be observed that the allegation of negligence in the petition was that the defendant failed to *transmit* or to deliver the message. The evidence as to the nature of the defendant's default is not preserved. The bill of exceptions, however, does state, in effect, that the plaintiff introduced evidence tending to sustain this averment. But the contention is made that proof, tending to show that the defendant failed to transmit the message, is no proof that the message was not *started*. We think that this distinction is too fanciful to be maintained. Proof that the company failed to transmit the message, that is, that it was not received at the office at St. Louis, is certainly *prima facie* evidence that it was not started.

The legal obligations in plaintiff's favor attached upon the delivery of the message to the defendant's agent in Denison. From that moment the defendant was liable to answer to the plaintiff, in proper damages, for a failure to transmit, or for material mistakes in transmission or unnecessary delays in the delivery. The clause in the contract, requiring the plaintiff in case of loss to present a written statement of the damage within a specified time, must be construed in the nature of a forfeiture of such right of action. Upon the principle that the law does not favor forfeitures, this clause of the contract should be strictly construed as against

the defendant corporation. It is a condition or limitation of its own making, and, in order to bring about a forfeiture of the plaintiff's right of action, the evidence must bring the case within the very letter of the limitation clause. The words of the contract are, "that no claim for damages shall be valid, unless presented in writing within thirty days after *sending* the message." That is, the plaintiff's right of action for the damages sustained shall be taken away, if he, for thirty days after the message is sent, fails to present a written claim. The neglect of the defendant, and not the presentation of the claim, creates the cause of action. There is no evidence in the case that the message was *sent*, but on the contrary the bill of exceptions states that there was evidence that it was not transmitted, which, as we have shown, is tantamount to proof that it had never been *started*. The defendant could only insist on the enforcement of the forfeiture, when it was made to appear that the message had been sent, or at least started. This is the letter of the "bond," and the defendant must abide by it.

This question was fully discussed in the case of *Western Union Tel. Co. v. Yopst*, 118 Ind. 248. The provision in the contract in that case read : "The company will not be liable for damages in any case, when the claim for damages is not presented in writing within sixty days after sending the message." The telegraph company insisted that Yopst could not maintain his action, because he had failed to observe this provision. The court said : "The time fixed by the contract is sixty days from the time of sending the message. The contract thus definitely names the time, and, in doing this, specifies the cases in which the limitation it designates shall apply. By the words of the contract the cases to which the limitation applies are those in which the message is *sent*. If this be true, and we cannot perceive why it is not, then, where there is no transmission of the message, but a total failure to transmit, there is

no limitation fixed by the contract, and no written notice or demand is required to fix the liability of the company. It is evident from the words of the contract themselves that it is only in cases where the message is sent or transmitted, that a written demand is required. There is no valid reason why the words of the contract should be extended, in favor of the company, to cases which they do not embrace. The limitation is for the benefit of the company and is of its own creation. * * * The limitation, as in favor of the company, is only effective when the company so far does its duty as to transmit the message delivered to it under a valid contract. The rights of the company under the limitation depend entirely upon the contract between the company and the sender of the message. In a proper case it constitutes a defense, but only in such a case. The rights of the sender do not depend upon the limitation, but they may be defeated by it in a case falling within the terms of the contract. In favor of the sender, the contract requires both a transmission over the wires and a delivery of the message." On the same question the supreme court of Alabama, in the case of *Western Union Tel. Co. v. Way*, 83 Ala. 542, 556, has this to say: "The limitation as to the time, in which a claim for damages must be presented, is in the nature of a condition subsequent, the non-performance of which operates a forfeiture of all damages. A condition operating a forfeiture, not being favored, will not be extended beyond the express or clearly-implied terms. The terms and conditions do not contemplate that the company's agents would wholly fail to send a telegram in the regular and usual course of business, and do not provide, when there is no effort to forward the message, for immunity from damages by reason of omission to present the claim within the contractual period of limitation. By the express words of the contract, the limitation does not commence to run until and from the time the message is started,—' *after the sending* of

the message.' There can arise no implication, from these words, that it was meant and intended that the limitation should begin to run from any date prior to the sending of the message, from the time it is received for transmission. It has no operation, unless there has been a partial performance by forwarding the message. When there is no attempt to start it, no effort to perform the contract, the right of action is not barred, unless the period prescribed by the statute of limitations has expired."

The reasoning of the courts in these cases recommends itself to us. We have, therefore, applied it in this case. There is some evidence that, a few days after the telegram was delivered, the plaintiff saw it on file in the general office of the company in Denison, but this is no evidence that the telegram had been sent, or that it had been started. Our conclusion is that, when the plaintiff introduced evidence tending to prove that the message was delivered to the defendant, but had not been received at St. Louis, before he could be defeated in his action for a failure to present a written statement of his damage, it devolved upon the defendant to introduce some countervailing proof to the effect, either that the telegram had been sent to St. Louis, or that it had been actually started over the wires from Denison. Even under this condition of proof, the question, like any other question of fact, would be for the jury. This conclusion necessarily leads to a condemnation of the court's action in directing a nonsuit. It may be well to say in this connection, that, in our opinion, that portion of the defendant's answer containing this special defense is insufficient. It should allege that the telegram was either sent to St. Louis, or that it was started over the wires from Denison.

We think that the rulings of the court on the question of damages were right under the pleadings. The plaintiff's evidence showed that he shipped only fifty-six head of cattle to St. Louis. The only damage stated

in the petition has reference to the loss on cattle shipped and sold in the St. Louis market. Under this averment it was not permissible to show, as the plaintiff attempted to do, that he lost on the other cattle sold elsewhere. The rule is very succinctly stated in *State to use v. Blackman*, 51 Mo. 319, in this way : "Damages are either general or special. General damages are such as the law implies or presumes to have accrued from the wrong complained of ; special damages are such as really took place, but are not implied by law., But, when the law does not necessarily imply that the plaintiff sustained damage by the act complained of, it is essential that the resulting damages should be shown with particularity, in order to prevent surprise to the defendant, which might otherwise ensue on the trial."

In view of a retrial of the case, we will call attention to the case of *Abeles v. Western Union Tel. Co.*, 37 Mo. App. 554, in which this court discussed the proper rule for establishing damages in cases like the one under consideration. It was there stated that only such damages could be recovered, as might fairly and substantially be considered as arising naturally,—that is, according to the usual course of things ; or such, as might be reasonably supposed to have been in the contemplation of both parties at the time they made the contract. If we apply this rule to the present case, the damages in no event could be extended beyond the loss sustained on three carloads of cattle.

For the reason above stated, the judgment of the circuit court will be reversed and the cause remanded. All the judges concurring, it is so ordered.