# ELIZABETH PRICE v. METROPOLITAN STREET RAILWAY COMPANY, Appellant.

### In Banc, May 22, 1909.

1. **NEGLIGENCE: Collision of Cars: Prima-Facie Case: Demurrer.** The plaintiff makes out a prima-facie case of negligence against defendant by showing the relationship of passenger and carrier, the collision of the car with another, the consequent injury of the passenger, and the control, management and operation of the cars to have been exclusively in the hands of defendant, its servants and employees; and with these facts proven, a demurrer to plaintiff's case should be overruled. There then arises a presumption of negligence on the part of the carrier.

2. ——: ——: **General Charge.** A petition whose only charge of negligence is that "the defendant carelessly, negligently caused and permitted the train on which plaintiff was riding as a passenger, to come in violent collision with another train of defendant's, said other train being on said Twelfth street and on said incline as aforesaid; that said collision was occasioned without any fault on the part of the plaintiff, but by reason of the negligence as aforesaid of the defendant," does not charge specific negligence, but charges general negligence; it does not undertake to say what specific acts of negligence caused the collision. And plaintiff, under such a charge, need prove no more than the relationship of passenger and carrier, the collision of the two cars, and the exclusive control over them by defendant, and her consequent injury and the extent of her injuries, thereby resting her case upon the well-founded doctrine of the presumption of the carrier's negligence arising from the established relationship. [Distinguishing Davidson v. Transit Co., 211 Mo. l. c. 361.]

3. ——: ——: ——: **Presumption of Carrier's Negligence: Waived by Specific Proof.** Where the petition charges the relationship of passenger and carrier and contains a general charge of negligence, plaintiff does not lose her right to rely upon the presumption of the carrier's negligence that arises upon the proof of the relationship, collision and the consequent injury, by putting in evidence tending to show the specific acts of negligence which caused the collision. She thereby assumed an unnecessary burden, but not having charged any specific acts of negligence, she does not, by undertaking to prove them, waive her right to rely upon the presumption, or to have the case submitted to the jury upon the instructions based upon that presumption.

4. ——: ——: ——: ——: **Instruction: Res Ipsa Loquitur.** Where the relationship of passenger and carrier is established, and the petition charges general and not specific negligence, and an unusual occurrence and the passenger's consequent injury, without her fault, are shown, and the car is shown to be exclusively under defendant's control, the doctrine of *res ipsa loquitur* applies, and an instruction basing plaintiff's right to recover upon the presumption of the carrier's negligence arising from these established facts is properly given.

5. ——: ——: ——: ——: ——: **Burden of Establishing Inevitable Accident.** In a case where the relationship of passenger and carrier, a collision, and the consequent injury of the passenger are established, under a general charge of negligence, an instruction telling the jury that "the presumption is that the collision was occasioned by some negligence of defendant, and the burden of proof is upon the defendant to rebut this presumption of negligence and to establish the

fact that there was no negligence upon its part, and that the injury, if any, was occasioned by inevitable accident, or by some cause which such highest degree of care would not have avoided," is proper, and especially appropriate where all the instrumentalities connected with the collision were under the control of defendant, and there is no evidence tending to show an intervening or separate cause. The burden, under the general charge, is upon the carrier to show that it exercised the highest degree of care, and the same proof that will show that the highest degree of care would not have avoided the accident will show that it was the result of inevitable accident. [Refusing to follow Feary v. Railroad, 162 Mo. l. c. 100.]

6. ———: Instruction: What Plaintiff Claims: Assumed to be True. A preamble to the instruction on the measure of damages, wherein "the jury are instructed that the plaintiff claims in her petition that on November 4, 1903, she was a passenger on a cable train of defendant, and that while she was a passenger on such train it came in collision with another cable train of defendant," is unobjectionable, and in no wise assumes such claims to be true or to have been proven.

7. ———: ———: Burden: In Case of Collision. Where the passenger is injured by a collision between cars, and the petition charges general negligence, an instruction placing the burden on plaintiff to prove that defendant's servants were negligent, should not be given. Such an instruction has no place in a case to which the doctrine of *res ipsa loquitur* applies.

8. ———: ———: Of Servants in Charge of Train: Passenger. Where the plaintiff while a passenger was injured by a collision, the court properly struck from defendant's instruction, telling the jury that if the injuries sustained "were merely the result of accident, other than by the negligence of defendant's servants in charge of the train," the words "in charge of the train"—there being proof of other acts of negligence which might have produced the accident.

9. ———: Evidence: Retroverted Womb: Pleading Permanent Internal Injuries. Evidence that after the collision plaintiff suffered from a displaced and retroverted womb is admissible under a general charge that she "received serious, painful and permanent internal injuries." Such an injury is an internal bodily injury; but a bodily injury is to be distinguished from conditions and diseases resulting from bodily injuries, which should be specifically pleaded, or evidence thereof excluded.

10. ———: ———: Best Appliances: Rail Brake. In a case between a passenger and a carrier the court does not err in permitting plaintiff to show that a rail brake would have been a better and more effective appliance for stopping the car whose

grip broke and thereupon the car ran down an incline and collided with another, than those used, where it is also shown that rail brakes were in use upon a similar incline on which defendant operates cars. That rule will apply to a case between master and servant, where the better appliance had been adopted by the master and was in use under similar conditions; and for a better reason it applies in a case between a passenger and carrier, because the law exacts a higher degree of care from a carrier than from a master.

Appeal from Jackson Circuit Court.—*Hon. John G. Park*, Judge.

AFFIRMED.

*John H. Lucas, Ben T. Hardin* and *R. B. Young* for appellant.

(1) The court erred in refusing to sustain the demurrer offered by defendant, at the conclusion of plaintiff's evidence, and the peremptory request at the conclusion of the whole case. 2 Fetter, Carr. Passengers, sec. 480; Nellis, Street Surface Railroads, p. 519; Spencer v. Railroad, 17 Am. and Eng. R. R. Cases (N. S.) 166; Hite v. Railroad, 130 Mo. 140; Roscoe v. Railroad, 202 Mo. 576. (2) The court erred in giving instructions requested by plaintiff for the following reasons, viz.: No. 1: (a) Because the doctrine of *res ipsa loquitur* does not apply to the case at bar. Roscoe v. Railroad, 202 Mo. 576; Bailey v. Railroad, 152 Mo. 449; Feary v. Railroad, 162 Mo. 101; Tuttle v. Railroad, 48 Iowa 236; Fitzgerald v. Railroad, 50 Mo. 516. (b) It too broadly states the rule of law sought to be invoked, casts the burden on appellant, and is misleading. Ham v. Barrett, 28 Mo. 388; Porter v. Hauser, 52 Mo. 524; Mansur v. Botts, 80 Mo. 651; Estes v. Desnoyers Shoe Co., 155 Mo. 577; Clark v. Kitchen, 52 Mo. 316. Instruction 2 is erroneous, in that it excludes from the consideration of the jury the evidence of defendant, ignores the issues tendered in pleadings and proof, and is mislead-

ing. Sawyer v. Railroad, 37 Mo. 240; Chappell v. Allen, 38 Mo. 213; Raysdon v. Trumbo, 52 Mo. 35; Bailey v. Railroad, 152 Mo. 449; Feary v. Railroad, 162 Mo. 101; Tuttle v. Railroad, 48 Iowa 236; Fitzgerald v. Hayward, 50 Mo. 516. (3) The court erred in refusing to give instructions asked by defendant. They properly declared the law, were sustained by the evidence and applicable to the pleadings. Instruction 2: It is the law that the burden of proof was on plaintiff. Bond v. Wood, 124 Mo. 72. Instruction 4: The petition charged that defendant had caused and permitted the collision by failure to exercise ordinary care, and plaintiff was bound by her theory. Wolfe v. Supreme Lodge, 160 Mo. 675; Sprague v. Sea, 152 Mo. 327; Reardon v. Railroad, 114 Mo. 384. Instruction 6: There was uncontradicted proof of care in selection and inspection of machinery, and the jury should have been confined to the only controverted issue of operation of train. Roscoe v. Railroad, 202 Mo. 586. (4) The court erred in admitting evidence with respect to the injury to plaintiff's womb, over the objections of defendant. Magrane v. Railroad, 183 Mo. 119; Muth v. Railroad, 87 Mo. App. 422; Atkinson v. Railroad, 80 Mo. 212; Chitty v. Railroad, 140 Mo. 64; McManamee v. Railroad, 135 Mo. 440. (5) The court erred in admitting evidence with respect to rail brakes, over the objection of defendant. Railroad v. Hall, 91 Ala. 112; Railroad v. Kithcart, 149 Fed. 108; McGinnis v. Canada Southern Bridge Co., 49 Mich. 466; Railroad v. McCormick, 74 Ind. 440; Railroad v. Bates, 146 Ind. 564; O'Neill v. Railroad, 66 Neb. 638; Railroad v. Seley, 152 U. S. 145.

*Brown, Harding & Brown* for respondent.

(1) The demurrers at the close of plaintiff's case and at the close of the whole case were properly overruled. Redman v. Railroad, 185 Mo. 1; Wilber v.

Railroad, 110 Mo. App. 690; Clark v. Railroad, 127 Mo. 197; Magrane v. Railroad, 183 Mo. 119; Lemon v. Chanslor, 68 Mo. 340; Hipsley v. Railroad, 88 Mo. 348; Allen v. Railroad, 183 Mo. 411; Coudy v. Railroad, 85 Mo. 85; Och v. Railroad, 130 Mo. 51; Malloy v. Railroad, 173 Mo. 75; Robinson v. Railroad, 103 Mo. App. 115; Chouquette v. Railroad, 80 Mo. App. 520; Tateman v. Railroad, 96 Mo. App. 453; Rattan v. Railroad, 120 Mo. App. 270; Hamilton v. Railroad, 114 Mo. App. 509; Roscoe v. Railroad, 202 Mo. 576. (a) Plaintiff did not waive the *res ipsa loquitur* doctrine. Cassady v. Railroad, 32 Am. & Eng. Ry. Cases (Mass.), 666; Redmon v. Railroad, 185 Mo. 9; Wilbur v. Railroad, 110 Mo. App. 694. (2) The court properly gave instruction 1. (a) The doctrine of *res ipsa loquitur* obtained. The petition alleged relationship of carrier and passenger and a collision. The evidence admitted it. Authorities under point 1. (b) This instruction followed the allegations in the petition. "From the facts alleged the law will draw a presumption of negligence. It is sufficient to follow the allegations." Allen v. Railroad, 183 Mo. 433. (c) It properly put the burden of exculpating itself on defendant. Clark v. Railroad, 127 Mo. 208; Redmon v. Railroad, 185 Mo. 9; Lemon v. Chanslor, 68 Mo. 355; Chouquette v. Railroad, 80 Mo. App. 520. (d) Instruction 2 was properly given. It must be read in the light of instruction 1 and all of defendant's instructions, and the jury is presumed to have read them all. It first and foremost required the jury to find for plaintiff, and that she was injured by defendant's negligence, before any damages were recoverable, and then proceeded to properly fix a measure and guide. Reilly v. Railroad, 94 Mo. 600; Gordon v. Burris, 153 Mo. 223; Fisher v. Packing Co., 77 Mo. App. 108; Keen v. Schweigler, 70 Mo. App. 409; Deweese v. Mining Co., 54 Mo. App. 476; Vegele v. Pickle, 56 Mo. App. 583; Noble v. Blount, 77 Mo. 735. (3) The court did

not err in refusing to give instruction 2 asked by defendant. It improperly placed on plaintiff the burden of proving the negligence of defendant. Cases cited under points 1 and 2. (4) The court properly admitted evidence relative to plaintiff's womb. (a) The injury was covered by the allegations in the petition. Wilbur v. Railroad, 110 Mo. App. 693; Brown v. Railroad, 99 Mo. 318. (b) It was the natural and direct result of her injury. Wilbur v. Railroad, 119 Mo. App. 693; Coontz v. Railroad, 115 Mo. 674. (c) Defendant waived objections by bringing out evidence on this subject. (5) The court properly admitted evidence respecting rail brake. (a) Defendant made no objection to the introduction of any of the evidence on this subject except Kevan, and that was upon a different ground than the one urged in this court. Russell v. Glasser, 93 Mo. 360; Bank v. Harris, 54 Mo. App. 160. (b) The evidence was properly admitted because it was shown without contradiction that the rail brake was an effective factor in controlling trains on an incline; that defendant was and had been using the rail brake on its other lines for nine or ten years.

PER CURIAM.—Upon consideration of this cause by the court In Banc, it is considered that the petition herein does not charge specific negligence, but general negligence, and the opinion by GRAVES, J., in division is adopted as the opinion of the court. The court is of the opinion that there is no real conflict between the views expressed in this case and that of Davidson v. Transit Company, 211 Mo. 320, and that the language used in the Davidson case, supra, and quoted in the opinion in this case, was language used *arguendo* in the discussion of an instruction there under consideration, and it was not thereby meant to say that the petition in the Davidson case was a charge of

specific negligence.   Judgment is therefore affirmed.
All concur; *Valliant, C. J.,* in separate opinion.

GRAVES, J.—Plaintiff, a passenger of the de-
fendant, sues for damages in the sum of $15,000, for
injuries alleged to have been received by reason of
the car upon which she was riding having collided
with another on the same track.   The locus of the
accident is the viaduct on the Twelfth Street line of
defendant's railway system in Kansas City, Missouri,
and the date November 4, 1903, between seven and
eight o'clock in the morning.   Plaintiff was a resi-
dent of Kansas City, Kansas, and was working for the
firm of Emery, Bird & Thayer, having charge of the
underwear department of that firm's store.   On the
day in question she boarded one of defendant's cars at
Grandview station in Kansas City, Kansas, and rode to
a point two short blocks from the defendant's Twelfth
Street line, where it crosses Mulberry street.   Pro-
curing a transfer ticket she went to Mulberry street
and there boarded an east-bound cable train (composed
of a gripcar and coach or trailer) to go to her place
of business.   Mulberry street is near the west end
of the Twelfth Street viaduct, which is quite a steep
incline, upon which were two cable tracks, one for
east-bound and one for west-bound cars.   The east-
bound cars used the south track.   After leaving Mul-
berry street, there is quite a space covered by this
overhead viaduct, and going east the first street
reached where the car rests on *terra firma,* is the bluff
or sometimes designated Bluff street.   A block east
is Lincoln street, which is on an upward incline from
the bluff or Bluff street, and whereat is a level space
to receive and discharge passengers.   Then there is
an upward incline to Summit street, where there is
another level place to receive and discharge passen-

gers, and going east from Summit is another upward incline. The cable train upon which plaintiff was riding passed over the incline and reached in safety Summit street, where it stopped. It then started and after going up the incline a short space started to run backward, slowly at first, but continued to increase its speed until it reached a point somewhere near the middle of the viaduct incline, where it collided with another of defendant's cable trains, bound eastward, and by this collision the plaintiff was injured. The petition, being a third amended petition, charges the relationship of passenger and carrier, and charges the negligence of the defendant in this language: "that while plaintiff was a passenger as aforesaid on one of defendant's said trains, going in an easterly direction on said Twelfth street in Kansas City, Missouri, and at a point commonly known as the Twelfth Street incline, the defendant carelessly, negligently caused and permitted the train on which plaintiff was riding as a passenger, to come in violent collision with another train of defendant's, said other train being on said Twelfth street and on said incline as aforesaid; that said collision was occasioned without any fault on the part of the plaintiff, but by reason of the negligence as aforesaid of the defendant; that said cars collided with great force and violence, wrecking both trains of defendant, so in charge of defendant's agents, servants and employees."

By way of answer the defendant said that it "denies both generally and specifically each and every allegation in said petition contained."

Upon trial of the issues there was a verdict, signed by ten jurors, giving plaintiff the sum of five thousand dollars damages, upon which judgment was entered. After timely but unsuccessful motions for a new trial and in arrest of judgment, the defendant appealed to this court.

For the plaintiff the cause was submitted to the jury upon two instructions, one on the measure of damages, and the other couched in this language:

"1. The court instructs the jury that if you believe from the evidence that the plaintiff was a passenger upon a train of defendant at the time she claims to have been injured, then having received plaintiff upon board of such train, the due obligation of the defendant to plaintiff was to use the highest degree of care practicable among prudent, skillful and experienced men in that same kind of business, to carry her safely, and a failure of the defendant (if you believe there was a failure) to use such highest degree of care would constitute negligence on its part; and defendant would be responsible for all injuries resulting to plaintiff, if any, from such negligence, if any. And if you believe from the evidence that there was a collision between two trains of defendant on one of which plaintiff was a passenger (if you believe she was a passenger thereon), the presumption is that it was occasioned by some negligence of the defendant, and the burden of proof is cast upon the defendant to rebut this presumption of negligence and establish the fact that there was no negligence on its part, and that the injury, if any, was occasioned by inevitable accident, or by some cause which such highest degree of care could not have avoided."

Those given and refused for defendant will not be noted here, but will receive attention later as occasion requires.

The plaintiff in person testified to facts showing the relationship of carrier and passenger, the collision of the two trains and her consequent injury, and the extent of the injury. Not being able to get a seat she was standing in the aisle of the coach at time of collision. By doctors she also showed the nature and extent of the injury. The plaintiff, however, did not stop here as she might have done, resting

her case upon the well-founded doctrine of presumptive negligence, but she introduces witnesses, the purport of whose testimony is to show a number of negligent acts upon the part of the defendant. This testimony for the plaintiff tends to show the following facts:

William Kevan testified that he was an experienced gripman of eight or nine years' experience on the line of defendant in Kansas City; that by riding over it he was familiar with the Twelfth Street incline; that at the time of the accident defendant was using two brakes upon the cars on the Twelfth Street line, the ratchet brake which was applied to the wheels of the gripcar, and the automatic brake which was applied to the wheels of the coach or the trailer; that both were operated from the gripcar; that if the ratchet brake was applied by the motorman too tightly it would lock the wheels of the car and cause them to slide, in which event the automatic brake would not work; that upon another incline, viz., the Ninth Street incline, defendant also used what is called a rail brake, which was applied directly to the rail and has nothing to do with the wheels; that the wooden shoe of the rail brake when applied to the rail had more friction than the other brakes named, and in his judgment was the best to stop a car on an incline; that sand used upon the track would help in stopping a car; that by spacing the cars was meant that they should be kept a certain distance apart upon the line; that he understood the Twelfth Street incline to be a twenty-five per cent grade and Ninth Street incline a thirty per cent grade; that the rail brake which had a two-foot surface applied to the track could be so applied as to lift the moving car from the track, but this would be better in case of a backing car on this incline, and was not dangerous; that if the rails were gummy by means of a foggy, damp morning, it would require a good load to hold

the rail brake down to the rail and keep the cars from sliding (the evidence shows these cars were very heavily loaded); that if the ratchet brake is put on too suddenly it will lock the wheels; that the proper thing is for the motorman to put it on gradually; that if the wheels were locked, the brake should be released and put on again and likewise with the automatic brake; that the motorman ought not to lock the wheels with his brakes.

P. J. Ryan testified: that he was in the employ of defendant, November 4, 1903, the date of the accident and had been for two months; that he was on the Twelfth Street line and among his duties he had to go over the whole Twelfth Street line to take care of the carrying pulleys and the curve pulleys; that the carrying pulleys carry the rope along; that the wreck occurred two hundred and fifty yards west of Summit street; that he got there seven or eight minutes after the wreck; that the coach was all broken up into small pieces and the gripcar was badly wrecked; that he was familiar with the conduits and conditions of the rope in the West bottoms; that all along from Fourteenth and Wyoming streets to Twelfth and Wyoming streets, the rope was at places dragging through mud and water; that this was west of the viaduct; that he was an oiler and truck man; that he went over the road every day, opened up the rope conduit and examined the wheels or pulleys; that the conduit was an oval shaped affair through which the rope ran; that in certain places where the rope dragged through the mud there were no wheels or pulleys, because he was unable to get them from the shop; that the conduit had not been all cleared out since the flood in June preceding; that there were bright places on the rope where the tar and oil usually on the rope had been cut off by the mud and water through which the rope passed.

By Elmer Graybill, a former employee of the defendant, it was shown: that he had worked for defendant in different capacities for thirteen years and for four years as gripman on the Twelfth Street line; that at the time of the accident and prior thereto defendant only used the ratchet and automatic brakes on the cars used on the Twelfth Street incline; that the rail brake has the greater surface friction and such brakes were used on the Ninth Street line; that he was superintendent at the time of the wreck; that P. J. Ryan was an oiler and looked after the wheels and such as that; that he was familiar with the conduit from Fourteenth to Twelfth on Wyoming street, as he went over the road every day; that there was mud and water in the conduit between those points, and the rope dragged through the mud and water, which had the effect of taking the tar off of the rope; that with the oil and tar off of the rope the grip would take hold quickly and start the car with a jerk, but when the rope was oiled and slick, when the grip was attached it would slip through the jaws of the grip so that the car would not jerk upon starting; that sand upon the track made it easier to stop a car, and especially if the track was slick and gummy.

Upon cross-examination he says: that this mud got into the conduit during the June flood and had not been cleaned out; that it had been cleaned out around the covers and pulleys; that the mud and water made the rope clear of tar and oil and the grip would take hold quicker, and the rope would not slide through the grip as it would when oiled, and the gripman would have to be particular or he would start with a very sudden jerk; that grip shanks had frequently been broken on the Twelfth Street line; that he had seen them break on heavily loaded cars; that he never knew the grip itself to break; that if the grip is tightly attached to the rope where the oil has been cut off by mud and water, it is liable to break the jaws of the

grip, but witness did not recall of one being thus broken; that this incline was not sanded but one night in the year whilst he was superintendent, and that was Carnival night, and because they expected a heavy travel and overloaded cars; that the cars were supposed to be spaced two minutes apart; that one car should stand at Mulberry street until the other got to Lincoln street on this incline; that at the time of the morning when this accident occurred no spacer was kept on duty, but from five o'clock to half past six in the evening, the hours of heavy travel, a man was kept at Mulberry street to space the cars so as to keep two cars off of the viaduct at the same time; then the witness further proceeds in this language:

"Q. In your opinion, could a heavily loaded car, even if the tracks were wet, be stopped that had started back after having stopped at Summit street and proceeded eight or ten feet east, and then something had gotten wrong with the cable, or his grip, or he had lost the cable, or it had become broken—could that car be handled or stopped by the gripman? A. Yes, sir—well, that is owing to the condition of the track more than anything else.

"Q. Under the circumstances that I have put to you? A. Well, there is two different kinds of wet tracks; there is quite a bit of difference in them.

"Q. Any wet track that is properly sanded? A. Well, if the track was properly sanded, of course a man ought to hold it with his brakes if properly sanded. . . .

"Q. Now, then, on a steep hill like that in a foggy morning, when there is a gummy or slippery rail, what would putting sand on the tracks, or anything else do, towards stopping a heavily loaded train? A. Sanding will help.

"Q. It would not hold the train? A. Yes, sir. If there had been plenty of sand it would have held the train.

"Q. With a car on as steep a place as that—with the wheels locked would it not slide notwithstanding the sand? A. You are not supposed to have the wheels locked. . . .

"Q. You do use sand on parts of the Twelfth Street road? A. Have a man to sand them?

"Q. Yes. A. Well, we used to have a man to sand the tracks at between Baltimore and Main, east-bound, and between Broadway and Washington, east-bound, and between Walnut and Main east-bound, and west-bound at about half way between the alley between McGee and Grand avenue and Walnut street.

"Q. What was that for? A. So that the car would not slip down on the track and run into any other one."

This witness further says that if a car going up the incline for any reason should become detached from the cable rope, the proper way was to set the automatic brake first and then the ratchet brake.

By H. H. Rogers it was shown: that he had worked on the Twelfth Street line as conductor and gripman, passing over the line twenty-two times per day; that there is a level space of forty to fifty feet at Summit street crossing; that the grade east of Summit is medium, not so steep as between Summit and Lincoln; that only the ratchet and automatic brake were used on that line; that the ratchet operated on the grip car and the automatic on the coach; that if the train had started up the grade from Summit street and the rope was lost by reason of breaking the grip or otherwise and the car started backward, the proper course would be to apply the automatic brake first and then the ratchet brake; that sand on the track would help materially in stopping a car going backward on that incline; that a rail brake had much more friction for stopping the car than did the other brakes.

220 Sup—29

On cross-examination some hypothetical questions were propounded thus:

"Q. Now, then, with that grade—assuming that a car is heavily loaded with passengers, all the seats taken and people standing in the aisle, and a dark, foggy morning, with the track slippery, after stopping at Summit street and then picking up the rope—that is, stopping the grip and rope so that it will pull the train from ten to a hundred feet up the incline east of Summit, if the grip then breaks, can the gripman hold it with any brakes, even with rail brakes or anything else?

"Q. Yes? A. I say he ought to stop the train on that level.

"Q. On which? A. On the level of Summit street.

"Q. After it has left Summit street? A. Yes, sir.

"Q. And stop it after it runs how far? A. You mean if it runs up?

"Q. Yes, sir. A. If it runs up the length of the train, that is forty or fifty feet.

"Q. I say, suppose he goes a hundred to a hundred and fifty feet, and the rail is quite slippery, a foggy morning, and the rail is slippery and gummy, a gummy rail, then can he stop it? A. The chances are against him; if he gets from a hundred to a hundred and fifty feet, he will not stop it with a big load.

"Q. Not stop it? A. I don't say not stop it, the chances are he would not.

"Q. He would not stop it even if the track was sanded, if it got that start? A. I would say if the track was sanded, he ought to stop it.

"Q. How is that? A. I say, if the track was sanded, he ought to stop it.

"Q. With what kind of a brake? A. With a ratchet brake and an automatic."

There were a number of witnesses who testified to the good health of plaintiff prior to the accident, and also to her subsequent bad health. Also witnesses who were present at the wreck who described the condition of the car upon which plaintiff was riding after the collision, as well as the appearance of the plaintiff after the wreck.

Such was plaintiff's case in chief and at this point the trial court overruled a demurrer to the testimony offered by the defendants.

The defendant from a number of witnesses who were or had been in their operating department deduced a number of facts, as follows: First, by an experienced man there was explained to the jury the full operation of a cable train—the movement and condition of the cable or rope—the mechanism and operation of the grip which attaches to the cable for the moving of the car—the mechanism and operation of the three kinds of brakes, i. e., ratchet, automatic, and rail brake—the construction and purpose of the cable conduit, and the pulleys therein—in fact a full description of the operation of a train and the instrumentalities used in such operation. It was also shown that a casting on the grip jaw broke first before that train started backward. The grip itself and the parts thereof were before the jury and fully explained. It was shown that the rail brake was not better than the ones used, and in fact not as good; that the material used in the grip was the best obtainable; that the grip on this car had been inspected the night before and was in good condition; that there was no mud or water in the conduit for the cable; that the rope or cable was well oiled; that mud and water would take off the tar and oil from the rope and make the grip take hold of the rope firmer and quicker and start the train with a jerk; that this would place a greater strain on the grip; that the rope or cable was in the

grip just after the accident, but the grip was broken and the break a fresh one.

The motorman was a witness and testified that his car had gotten about the train-length from Summit street when his grip broke with a snap; that he put on the automatic brake and then the ratchet brake, but was unable to stop the train; that he did all that could be done, and remained with his train until the collision; that he then took out the grip and found it broken, the break being fresh throughout; that he had the train well loaded. Other witnesses not employees of defendant corroborate him as to the grip snapping just before the train started backward.

By one witness it was shown that sand 'was not a good thing to use on an incline because it made the cars pull heavy up hill. By another that the rail brake would knock off the sand. By another that they usually sanded this incline every morning, but he would not say that it had been sanded on this morning. By another it was shown that there was a flagman who was stationed at Mulberry street to watch the street crossing, and also to see that the cars did not run too closely together on that viaduct and incline, and that at the stockyards a mile west of Mulberry street there was a man to space the cars going east over this incline.

From the evidence it also appears that it was a damp, foggy morning and the rails were wet and gummy; that the rope was being properly oiled; that the grip was properly inspected, although on cross-examination it 'was developed that' there was but one man to inspect twenty or more trains, and it took a half hour to the train, which was more hours than he had from the time the trains came in at night and went out in the morning.

In fact the evidence showed care upon the part of the gripman and the use of proper appliances in proper conditions.

This sufficiently states the case.

I.   Defendant insists that its demurrer to plaintiff's evidence should have been sustained.   To this we cannot assent.   The relationship of passenger and carrier was shown.   The collision of two cars was shown, and the consequent injury of the plaintiff was shown.   The management, control and operation of these two cars or trains were shown to have been exclusively in the hands of the defendant, its agents and employees.   The occurrence, *i. e.*, the collision, is not of the usual and ordinary occurrences in the operation of such trains.   On the other hand it is an unusual occurrence. The full details of this collision were before the jury.   With this situation proven there arises for the protection of a passenger a presumption of negligence upon the part of the carrier, so that at the close of plaintiff's case, unless for reasons to be discussed later, she was debarred of this presumption of negligence, she had made a prima-facie case for the jury, and the demurrer was properly overruled.

II.   But it is contended by the defendant that the doctrine *res ipsa loquitur* does not apply to this case. This it would seem was urged upon two grounds, when we read the briefs in this and the companion case of Loftus v. Metropolitan Street Railway Co., *infra,* page 470, and passed upon at this term of the court, and which for good reasons we have in a way considered with this case.   First, defendant urges that the petition charges specific negligence and not general negligence, and for that reason the doctrine of *res ipsa loquitur* has no application.   Secondly, they urge that although it be conceded that the petition is one charging general negligence, yet the plaintiff in her proof in chief undertook to point out specific acts of negligence, and for that reason the doctrine of *res ipsa loquitur* does not apply and all instructions.

based upon that theory were erroneously given. Of these two contentions in their order.

(a). Does this petition charge specific acts of negligence? We think not. The only charge is that "the defendant carelessly, negligently caused and permitted the train on which plaintiff was riding as a passenger, to come in violent collision with another train of defendant's, said other train being on said Twelfth street and on said incline as aforesaid; that said collision was occasioned without any fault on the part of the plaintiff, but by reason of the negligence as aforesaid of the defendant."

This to our mind is a charge of general negligence. Had the petition averred a negligent collision of the two trains, and then proceeded to state that such collision was occasioned by the negligence of the gripman in the operation of the car, or the negligence of the conductor in the operation of the train, and pointed out wherein they or either of them had been negligent, or had it charged a negligent failure to use proper appliances and pointed out the insufficient appliances; or had it charged that the collision was due to some negligent condition of the track, naming and pointing out such, or other such similar specific acts, then there would have been specific negligence. By defendant we are pointed to the case of Roscoe v. Railroad, 202 Mo. 576. This case is not in point nor an authority here. In that case not only a negligent collision was charged, but we analyzed the petition and found six specific charges of negligent acts which were alleged to have brought about the collision. We then held, and rightly, under the great weight of authority, that the plaintiff had pleaded negligence specifically, and if a recovery was had it must be upon specific acts of negligence. But the petition there and the petition here are not at all similar. No specific acts of negligence are charged in the petition before us now. It is as general as it

could be to state a case or charge negligence at all. Nor do these views conflict with Orcutt v. Century Bldg. Co., 201 Mo. 424, for in that case there was a number of specific assignments of negligence charged in the petition, as there was in the Roscoe case, *supra*.

We are next cited to the case of Davidson v. Transit Co., 211 Mo. 320, and especially that part of the opinion found upon the bottom of page 361 and top of page 362. This case is apparently in conflict with the views as herein expressed on the question of the petition in the case at bar stating general and not specific negligence. In the Davidson case the charge of negligence was very much as in the case at bar. It was a collision of two street cars, and the negligence was thus stated, "defendant so carelessly and negligently conducted itself that a car in which plaintiff was riding was caused to collide with another car belonging to defendant upon Grand avenue, near its intersection with Finney avenue, whereby plaintiff was thrown down," etc. The Davidson case, when finally determined by the court. In Banc, makes this observation as to the character of the charge of negligence contained in the petition of that cause: "A recovery in this action is sought upon the negligence which is alleged to consist in the defendant's so carelessly and negligently operating its cars that the car in which plaintiff was riding was caused to collide with another car belonging to defendant upon one of the avenues of the city of St. Louis. In other words, specific negligence was alleged upon which a recovery was sought, and the instruction in order to conform to the uniform rulings of this court should have limited the consideration of the jury to the acts of negligence specifically complained of in the petition."

The case of Roscoe, *supra*, is cited in connection with this proposition. We are inclined to think that the language of the Davidson opinion goes too far when it denominates the charge of negligence so con-

tained in the petition of that case specific negligence, rather than general negligence.

(b). Nor are we impressed with the contention made that because plaintiff on her case in chief put in proof of some specific acts of negligence, she is thereby precluded from the presumption of negligence to which she was entitled under her petition, it being one charging negligence in general terms and not specifically. In so doing she assumed a burden that she did not have to assume in making out a prima-facie case, but it does not lose her the right of resting upon the presumption, if the evidence so introduced does not clearly show what did cause the accident. The rule is well stated by the Supreme Court of Massachusetts, in Cassady v. Old Colony Street Railway Co., 32 Am. and Eng. R. R. Cases (N. S.), l. c. 671: "The defendant also contends that even if originally the doctrine would have been applicable, the plaintiff had lost or waived her rights under that doctrine, because, instead of resting her case solely upon it, she undertook to go further, and show particularly the cause of the accident. This position is not tenable. It is true that, where the evidence shows the precise cause of the accident, as in Winship v. Railroad, 170 Mass. 464, 49 N. E. 647, and Buckland v. Railroad, 181 Mass. 3, 62 N. E. 955, and similar cases, there is, of course, no room for the application of the doctrine of presumption. The real cause being shown, there is no occasion to inquire as to what the presumption would have been as to it if it had not been shown. But, if at the close of the evidence, the cause does not clearly appear, or if there is a dispute as to what it is, then it is open to the plaintiff to argue upon the whole evidence, and the jury are justified in relying upon presumptions, unless they are satisfied that the cause has been shown to be inconsistent with it. An unsuccessful attempt to prove by direct evidence the precise cause does not estop the plaintiff

from relying upon the presumptions applicable to it.''
To like effect is D'Arcy v. Railroad, 81 N. Y. Supp.
952.

This is different from a case wherein the plain-
tiff pleads that the collision was occasioned by one
or more specific acts of negligence. When she so
pleads it rises to the dignity of an admission of record,
that she knew the cause of the accident. Not only
so, but she points out specifically the negligent acts,
and must prove them, and recover, if at all, upon the
negligent acts pleaded. A mere attempt to prove neg-
ligent acts hardly justifies the conclusion that a plain-
tiff knows the cause of the accident. The Roscoe case,
*supra,* does not go to the extent of supporting this
contention of the defendant, nor do we feel that we
should go a step further as argued by counsel in the
oral argument.

III. Defendant lodges several complaints against
the action of the trial court in giving instruction num-
bered 1, for plaintiff, which instruction we have set
out in the statement.

(a). It is urged as being erroneous because the
doctrine of *res ipsa loquitur* does not apply to this
case. This contention we have disposed of in our
preceding paragraph. If the negligence pleaded is
general negligence and not specific negligence, as we
have above concluded, then the case falls peculiarly
within the doctrine of *res ipsa loquitur.* We have an
unusual occurrence in the operation of machinery
entirely under the control of defendant. We have an
injury without fault of plaintiff. We have undisputed
the relation of carrier and passenger. In such case,
presumptive negligence arises, and the doctrine afore-
said is fully applicable.

(b). It is urged that this instruction ''too broad-
ly states the rule of law sought to be invoked, casts
the burden on appellant, and is misleading.'' We are

unable to view the instruction as defendant sees it. That the burden is upon the defendant to rebut the presumption and to show that it has not been guilty of negligence in a case of this character is unquestioned law. The latter part of the instruction, which says, "and that the injury, if any, was occasioned by inevitable accident or by some cause which such highest degree of care could not have avoided," is the bone of contention.

In the first place, when the defendant has assumed, as it must do under the law, the burden of showing that it has exercised the highest degree of care, and has carried that burden successfully, the same proof establishes that the collision was the result of inevitable accident or was by some cause which the highest degree of care could not have avoided. In other words the proof of the one is proof of all the propositions. And especially is this true where all the instrumentalities connected with the collision are absolutely under the control of the defendant, and not a scintilla of evidence tending to show an intervening and independent separate cause, as in this case.

The wording of this instruction is well grounded on authority in this State.

In Lemon v. Chanslor, 68 Mo. l. c. 356, this court quoted with approval the following: "When damage or injury happens to the passenger by the breaking down or overturning of the coach, the presumption, prima-facie, is that it occurred by the negligence of the coachman, and the *onus probandi* is on the proprietors of the coach to establish that there has been no negligence whatever, and that the damage or injury has been occasioned by inevitable casualty, or by some other cause which human care and foresight could not prevent. For the law will, in tenderness to human life and limbs, hold the proprietors liable for the slightest negligence, and will compel them by satisfactory proofs, to repel every imputation thereof."

Not only so but we expressly approved of instructions one and two given for the plaintiff and found set out at length in 68 Mo. 1. c. 342 and 343. The latter part of instruction one reads: "then it rests on the defendant to prove to your satisfaction that said hack was safe, sound, roadworthy, not overloaded and carefully driven, and that said axle broke, and said accident arose from and was caused by inevitable accident or defect that could not have been seen, detected or known to defendants, their servants or agents, by the exercise of the utmost skill, knowledge, foresight, care, inspection and examination of said coach by defendants, their agents or servants, and unless the jury so believe they will find for plaintiff."

And instruction two, so approved, reads: "If the jury believe from the evidence that on February 3, 1874, the defendants were engaged in the business of transporting passengers from the railroad depot in Lexington to any and all points of said city, and that on said day the plaintiff was received by them, or their agents, at said depot to be carried on one of the hacks of defendants, and that while being so transported on said hack plaintiff was injured by reason of the breaking of an axle on said hack, then the burden of proof rests upon defendants to prove to the satisfaction of the jury that said breakdown was caused by inevitable accident and not from any defect, imperfection in the hack, overloading or careless driving, and that by the exercise of the utmost human foresight, knowledge, skill and care, such injury could not have been prevented by defendants, their agents or servants, and unless the jury so believe they will find for the plaintiff." The instruction in the case at bar goes no further. In each of the instructions, *supra,* the burthen was placed upon defendant not only to show no negligence on his part, but in addition that the injury "was caused by inevitable accident."

Again in the case of Coudy v. Railroad, 85 Mo. l. c. 85, NORTON, J., said: "The court gave an instruction predicating the right of plaintiff to recover on the facts stated in the petition, and told the jury that if they believed from the evidence that those facts were true they would find for plaintiff, unless they further found that the checking of the train .was the result of some unforseen or unavoidable accident beyond the control of defendant's agents, and that the burden of proof was on the defendant to show such fact. It is claimed that this instruction is erroneous in that it devolves on defendant the burden of excusing the sudden checking of the train. The instruction, we think, is sustained by the authorities which hold that when an injury is shown to have been occasioned by an error of the carrier or his servants in operating the instrumentalities employed in the business of carrying, a presumption of negligence arises against the carrier, which casts on him the burden of showing that the accident happened notwithstanding the exercise on his part of the high degree of care which the law imposes upon him." It will be noted that the instruction complained of in that case placed the burden upon defendant to show that the injury was the result of "some unforseen or unavoidable accident."

Further, in Hipsley v. Railroad, 88 Mo. l. c. 352, this court said: "In the case of Lemon v. Chanslor, 68 Mo. 341, we had occasion to consider the rights of a passenger and the duty under the law which that relation cast upon the common carrier, and it was there held that when the evidence shows that a passenger, without fault of his own, received injury by the overturning or breaking down of the vehicle in which he is being carried, a prima-facie case is made out for him, and the *onus* is cast upon the carrier of relieving himself from the responsibility by showing that the injury was the result of an accident which the utmost skill, foresight and diligence could not have prevented. This

rule was applied in a case where horse power and hack were used by the carrier for carrying passengers, and it applies with equal if not greater force when the more powerful instrumentality of steam is used as the motive power. While carriers are not insurers of the absolute safety of passengers and are not responsible for inevitable and unavoidable accidents, regard for the safety of human life and limb has led to the adoption of the rule announced.''

To a like effect is the language of GANTT, P. J., in Clark v. Railroad, 127 Mo. l. c. 208, wherein he says: ''The obligation of a steam railway carrier to its passengers is, as far as it is capable by human care and foresight, to carry them safely, and it is responsible for all injuries resulting to its passengers from any, even the slightest, neglect, and when the passenger suffers injury by the breaking down or overturning of the coach the prima-facie presumption is that it was occasioned by some negligence of the carrier, and the burden is cast upon the carrier to rebut and establish that there has been no negligence on its part and that the injury was occasioned by inevitable accident or by some cause which human precaution and foresight could not have averted. [Lemon v. Chanslor, 68 Mo. 340; Furnish v. Railroad, 102 Mo. 438.]''

The broad doctrine announced in Feary v. Railroad, 162 Mo. l. c. 100, under paragraph IX, by MARSHALL, J., is not in accord with the cases cited above. It is based largely upon the case of Tuttle v. Railroad, 48 Iowa 236, and entirely ignores the pronounced doctrine of this court in the cases, *supra*. The Iowa court is not in harmony with this court upon the question in hand, except in the Feary case, *supra*, and on this point we are not inclined to follow the Feary case. Had it reviewed and overruled the previous Missouri cases a different question would have been presented.

In cases such as is disclosed by the record in this case, this instruction is proper.

IV.   Objection is urged to plaintiff's instruction number 2, which reads: "The jury are instructed that the plaintiff claims in her petition that on November 4, 1903, she was a passenger on a cable train of defendant, and that while she was a passenger on such train it came in collision with another cable train of defendant.

"Now, if you find for the plaintiff, and if you believe from the evidence that she sustained injuries as a direct result of said collision, then you may allow her damages for such injuries, if any, as you may believe from the evidence she has sustained as a direct result of said collision.   In estimating such damages you may take into consideration the pain and suffering which you may believe from the evidence she has endured, if any, or is reasonably certain to endure in the future, if. any, as a direct result of such injuries, if any.   You may also take into consideration the loss of earnings, if any, which you may believe from the evidence she has sustained as a direct result of such injuries, if any.   You may also take into consideration any sum of money which you may believe from the evidence plaintiff has reasonably become liable for, if any, for necessary medical treatment received by her on account of and as a direct result of said injuries, if any, not to exceed $250, but the whole amount of your verdict should not exceed the sum of $15,000."

The portion attacked is the first paragraph. wherein the court sets out what the plaintiff claims in her petition.   The remaining portion of the instruction is certainly not objectionable as to the measure of damages, and the items going to make up such damages. There was evidence as to her earning capacity, as there was also evidence of the sums for which she had become obligated for medical services.   This portion of the instruction has met with frequent approval by this court.   Nor is the first paragraph objectionable, for it simply recites what the plaintiff claims in the

petition and no more. It in nowise assumes such claims to be true or to have been proven, but makes a simple recital of her claims as stated in the petition. There was no error in giving this instruction.

V. (a). It is next urged that there was error in refusing defendant's instruction number 2. This instruction attempted to declare the law thus: "The court instructs the jury that in this case the burden of proof rests upon the plaintiff to prove to your satisfaction by the preponderance of the credible evidence in the case, that defendant's servants were guilty of negligence as submitted to you in these instructions for your consideration; and this burden of proof as to said negligence continues with the plaintiff throughout the entire trial; and unless you believe and find from the evidence in this case that the plaintiff has proven by a preponderance of the credible evidence in the case, to your satisfaction, that the defendant's servants at the time and place alleged, were guilty of negligence as alleged and specified in these instructions, and that said negligence was the direct and proximate cause of plaintiff's injury, then you cannot find for the plaintiff, and your verdict must be for the defendant."

Such an instruction has no place in a case where the doctrine of *res ipsa loquitur* is applicable. It destroys every vestige of the doctrine of presumptive negligence. In a preceding paragraph the question of the burden of proof is fully discussed, and we shall not reiterate at this point. The instruction was properly refused.

(b). Defendant also complains of the court in modifying instruction number 6 as asked by it. The court struck out the words, "in charge of the train," which we have italicized in the original draft presented by defendant, which original instructions reads: "Carriers of passengers are not insurers of the safety

of those whom they convey, nor answerable for an accident, no matter how produced, excepting only those accidents which can`be traced to some neglect of duty. If, therefore, you believe from the evidence that the injuries sustained by the plaintiff were merely the result of accident, no matter how produced, other than by negligence of defendant's servants *in charge of the train,* then plaintiff cannot recover, and your verdict must be for the defendant.''

With the five italicized words stricken out the court gave the instruction. There was no error in striking out these words. Under the proof in this case, which not only covered acts of the servants in charge of the train, but divers other acts which might have produced the accident, the modification was imperatively demanded. The instruction as modified and given was really more favorable to the defendant than was authorized by the record.

Several other similar objections are urged to the refusal of instructions by the trial court, each of which we have examined, but find them without sufficient merit to require detailed notice herein.

VI. In the course of the trial it was shown over the objection of the defendant that after this collision the plaintiff suffered from a displaced or retroverted womb. The admission of this testimony is alleged as error, as being beyond the purview of the injuries charged in the petition.

The petition charges: ''That she received a hard and serious blow on the back of her head, seriously injuring plaintiff's head; that she received a hard and serious blow in the chest and stomach, seriously injuring the same; that plaintiff's right hip was crushed, dislocated and injured, her right arm was sprained, skinned and bruised; that her back was twisted, wrenched, sprained and injured; that her left side and

leg were skinned and injured, and that she received serious, painful and permanent internal injuries.''

This evidence was evidently admitted under the latter clause of the allegation pertaining to internal injuries, which is rather general on the subject of internal injuries. Yet, this was an internal bodily injury, and we use the terms *"bodily injury"* purposely, so as to distinguish such from conditions and diseases which may result from bodily injuries. The one may be shown under a general allegation whilst to the mind of the writer the other should be specifically pleaded and pointed out by the pleadings.

A similar question is thus disposed of by JOHNSON, J., of the Kansas City Court of Appeals, in the case of Wilbur v. Railroad, 110 Mo. App. l. c. 693: ''Over the objections of defendant the plaintiff was permitted to introduce evidence of various bodily injuries, chiefly internal, sustained from his violent projection and fall. The ground of the objections was the absence from the petition of allegations of the existence of the particular injuries which the evidence admitted at the trial tended to prove. The averment is that plaintiff 'was greatly injured in body and mind and suffered great permanent injury.' It is true, as urged by defendant, that all of the facts constitutive of the cause of action must be pleaded in the petition. [Sidway v. Mo. Land, etc., Co., 163 Mo. 375; Lanitz v. King, 93 Mo. 513; Pier v. Heinrichoffen, 52 Mo. 336; Leete v. Bank, 141 Mo. 581.] But defendant in making application of this rule assumes an incorrect premise. It is the *fact of injury* that is elemental, not the nature or character of the particular wounds and hurts which necessarily and naturally result from the negligent act. They serve to create the substantive fact and are included within its bounds. Evidence of particular bodily injuries received by plaintiff in

the wreck resulting from defendant's negligence was admissible under a general averment of injury to the body. [Brown v. Railroad, 99 Mo. 318; Seckinger v. Mfg. Co., 129 Mo. 590; Coontz v. Railroad, 115 Mo. 674; State to use v. Bacon, 24 Mo. App. 405; Pinney v. Berry, 61 Mo. 359; Barrett v. Telegraph Co., 42 Mo. App. 542.] It is not to be inferred defendant would not have been entitled to a more definite statement had he by proper motion sought to be informed of the nature of the injuries claimed. Without filing such motion defendant answered, putting in issue the fact of any injury. In this condition of the record, the objections, made for the first at the trial, came too late. [Seckinger v. Mfg. Co., supra; Grove v. Kansas City, 75 Mo. 672; Spurlock v. Railroad, 93 Mo. 530; Bowie v. Kansas City, 51 Mo. 454.]"

We think this correctly states the law as to bodily injuries received in an accident, but it should be limited as Judge Johnson does limit it. If plaintiff proposed to rely upon conditions and diseases growing out of the alleged bodily injuries, then specific pleading thereof should be required, or the evidence excluded.

We are cited by defendant to the case of Magrane v. Railroad, 183 Mo. 119. It is from the fifth paragraph of that opinion wherein defendant seeks consolation. It will be observed that for some reason unknown to the writer not then a member of this court, that paragraph was withdrawn by a *per curiam* opinion. The case as it now stands, therefore, lends little weight to defendant's contention, but the original opinion accords with the views of the writer, because the evidence there introduced was such as showed a condition or disease superinduced by a bodily injury, and as we see it, such condition or disease so resulting should have been specifically pleaded, and could not be proven under a general allegation of bodily injuries alone. But the case at bar is different. This

petition alleges internal bodily injuries generally, and one of those internal bodily injuries is shown to be a misplaced womb. In other words, it is a bodily injury itself that is shown, rather than a condition or disease growing out of a bodily injury. This contention is ruled against defendant.

VII. Further contention is made that there was error in admitting the testimony concerning the rail brakes. There was no error in admitting this evidence. It appears that upon a similar incline controlled by defendant and over which defendant operated its cars, rail brakes were in use and that they were very effective in stopping cars on an incline. In fact, that they were the most effective appliance for such purpose. This presents, therefore, a different question to a case wherein the defendant had never adopted the use of such appliances. Here it had adopted and used such appliances, but failed to have them upon the car in question, or in use upon the line in question.

The cases relied upon by defendant are such as hold that a railroad is not required to adopt every appliance which some roads, or even a majority of well-regulated roads have adopted, nor to adopt the latest and newest appliances. They are not in point in this case and that for two reasons. First, these cases relate to the duties of a master to his servant, and the degree of care required in that case is not the degree of care required between carrier and passenger. And, secondly, even if the same degree of care were applicable to the two classes of cases, which is not true, yet where it is shown that the defendant had adopted and used the device and it was safer and better than others in use for a like purpose, the evidence was proper as tending to show the failure to exercise that degree of care required by the law.

VIII. There is also a charge of improper remarks by counsel for plaintiff, which we have examined, and we fail to see any substantial error in the action of the court at the time.

Nor is there merit in the claim of excessive damages. The woman was under the evidence seriously and permanently injured. She earned $120 per month the month previous to the accident. She had not been able to return to her work at the time of the trial. A further detail of the injuries would serve no useful purpose. It follows from what has been said that the judgment should be and is affirmed, but inasmuch as the conclusion here reached upon the question of whether or not the petition states general or specific negligence is in conflict with Davidson v. Transit Co., *supra,* a case decided by the court In Banc, this cause should be and is certified to the court In Banc, for final determination. *Valliant, J.,* concurs *in toto,* except he does not think this case conflicts with the Davidson case; *Woodson, J.,* concurs in result, but dissents from paragraph one and expresses no opinion on paragraph six; *Lamm, P. J.,* concurs in all except paragraph six.

## SEPARATE CONCURRING OPINION.

VALLIANT, C. J.—The subjoined opinion written by me in division is filed herein as an expression of my views upon the case in this court.

I concur in all that my Brother GRAVES has written as the law of this case, but I do not agree that what he has said is in conflict with what was said in the case of Davidson v. Transit Co., 211 Mo. 320. That case and this are alike to this extent, to-wit, the injury in each case was caused by a collision of two street cars belonging to and operated by the same defendant, and it was so stated in each petition, and also that the

collision was caused by the negligence of defendant's servants operating the cars, but there was no further specification of negligence, that is, in neither case did the plaintiff specify in what respect the servants handling the cars were negligent; the statement was that the collision occurred by their negligence, that was all.

The charge of negligence in each case was in a sense general and in another sense specific; it was general in the sense that it did not specify the negligent act of the defendant's servants in bringing about the collision, and it was specific in the sense that it did allege that the injury was caused by a collision of two cars operated by defendant. Therefore, reading what was said in the Davidson case, in the close connection in which it was said, the court was entirely justified in saying that the charge of negligence in that petition was specific, because the court was comparing the allegation in the petition with the instruction given for the plaintiff. In that instruction there was no reference to a collision, and the jury were not required to find that there was a collision, but were authorized to find for the plaintiff if they should find that defendant was negligent in any respect whatever. After defining the degree of care that a carrier was required to exercise for the protection of a passenger the instruction said: "and the defendant is responsible for the injuries resulting to its passengers through the failure to exercise such care, and any failure on the part of the defendant to exercise a very high degree of care and diligence of a very prudent person in operating its cars would be such negligence as to make the defendant liable for any injury to the plaintiff resulting from such neglect." So this court said: "A recovery in this action is sought upon the negligence which is alleged to consist in the defendant's so carelessly and negligently operating its cars that the car in which plaintiff was riding was caused

to collide with another car belonging to defendant upon one of the avenues of the city of St. Louis. In other words, specific negligence was alleged,'' etc. Under the instruction in the Davidson case, though the plaintiff had failed to make any proof of a collision, and her evidence had tended to show that she had been thrown to the ground in attempting to alight from the car by a sudden starting of it, the jury were authorized to find a verdict for the plaintiff, but this court said, No, you have specified a collision between two cars and you can recover only on proof of that specification.

But in the case at bar there is no such instruction; the jury were authorized to find a verdict for the plaintiff only on proof of the negligence specified, to-wit, the collision. In that sense the charge was specific, although in pleading the negligence of the defendant's servants in bringing about the collision the charge was general. Therefore, it is correct in this case to say, in the connection in which the term is used, that the charge is general. In my opinion there is no conflict between what this court said in the Davidson case and what Brother Graves now says in this case; therefore, I dissent from the order transferring the cause to the court In Banc.